**In re the MARRIAGE OF Deborah Block WELP and William A. Welp.**

**Upon the Petition of**

**Deborah Block Welp, Appellant,**

**And Concerning**

**William A. Welp, Appellee.**

**No. 97–402.**

Supreme Court of Iowa.

July 8, 1999.

Robert P. Montgomery of Parrish, Kruidenier, Moss, Dunn & Montgomery, Des Moines, for appellant.

William A. Welp, Marshalltown, appellee, pro se.

Considered by McGIVERIN, C.J., and LARSON, NEUMAN, SNELL, and CADY, JJ.

McGIVERIN, Chief Justice.

The question here is whether a 1995 dissolution of marriage decree, which divided the parties' real property assets but, subject to certain guidelines, left division of personal property to be decided by the parties, was a final judgment. A related question is whether a subsequent order in 1997, which more specifically divided the

parties' personal property, extended the time for appeal from provisions of the 1995 decree. The answers determine whether petitioner's appeal from provisions of the 1995 decree was filed in a timely manner.

We conclude that the 1995 original decree was a final judgment for purposes of Iowa rules of appellate procedure 1(a) and 5(a). Because petitioner did not file her notice of appeal within thirty days after the decree was filed, we have no jurisdiction to consider an issue raised in her appeal concerning the 1995 decree. We therefore sustain respondent's motion to dismiss the appeal.

## I. Background facts and proceedings.

### A. The 1995 decree.

After trial, the district court on November 16, 1995 entered its findings, conclusions and decree dissolving the marriage of petitioner Deborah Welp and respondent William Welp. The decree also adjudged matters concerning joint custody and physical care of the parties' two children, visitation and child support, property settlement, spousal support, and attorney fees and costs.

During trial, the parties agreed that the party awarded physical care of the children should have the right to occupy the family residence as long as the children qualified as dependents. The court's decree awarded William physical care of the parties' children and the right to occupy the family residence with the children. After the children reach eighteen years of age or graduate from high school and no longer reside at home, the home is to be sold and the proceeds divided equally between the parties.

As to personal property, each party received a vehicle and the cash, checking accounts, savings accounts or investments in their possession. William was awarded his law practice, including accounts receivable, subject to notes and obligations thereof and was required to pay the debts of the parties listed at two banks.

In the decree, the court stated that it would "not endeavor to divide the parties' tangible personal possessions in and about the residence" because the record submitted "was insufficient for this purpose" and "did not develop this aspect sufficiently to allow the Court to pretend to reach a full equitable division." The court therefore ordered:

> Such items *as are personal to each party should be retained by him or her as the case may be.* The residential furnishings and appliances should remain as nearly intact as possible in order to preserve the home environment for the benefit of the children.... Deborah should be given latitude as far as furniture and furnishings to accommodate her housing needs once acquired. In the event the parties are unable to reconcile their differences as to any particular items of personal property, the same shall be sold at public auction with each party having the right to bid thereon and the net proceeds shall be divided equally between the parties.

(Emphasis added.)

No appeal was taken by Deborah within thirty days of the November 16, 1995 decree concerning the terms thereof.

### B. The contempt action.

The parties were unable to agree on the division of some of the tangible personal property in the family residence.

On April 26, 1996, Deborah filed an application for rule to show cause asking that William be found in contempt of court for refusing to return to her items that she alleged were personal to her and which were in William's control. Deborah's application acknowledged that absent William's agreement "with respect to the jointly-acquired items of property, the same will have to be placed at public auction pursuant to the Order of the court."

Deborah's application did not allege that the November 16, 1995 decree was not a final judgment. Instead, she stated that personal property items not agreed upon by the parties were subject to being sold at public auction.

On its own motion, the court appointed a special master, *see* Iowa rule of civil procedure 207, and ordered the special master to investigate the circumstances presented in Deborah's application and report his findings to the court "for the purposes of appropriately implementing" the court's original decree.

The special master made such investigation, attempted to mediate the parties' differences, and filed a report concerning his recommendations for detailed division of eighty-six items of personal property and for appraisal and auction sale of several pieces of valuable crystal.

On February 6, 1997, after hearing, the court basically approved the master's report, making some modifications, and stated "[a]ny particular items of personal property which cannot be agreed upon within thirty (30) days following filing of this Ruling shall be sold at public auction with each party having the right to bid thereon and the net proceeds to be divided equally between the parties!" The court did not rule on whether William should be found in contempt.

### C. The appeal.

On March 3, 1997, Deborah filed a notice of appeal from the November 16, 1995 decree and the February 6, 1997 ruling on the special master's report. However, the only assignment of error raised in Deborah's brief is that the district court erred in refusing to grant her a present interest in or a lien on the marital residence. It was the 1995 decree that addressed division of the parties' real estate and marital residence. Her brief makes no assignment of error concerning the court's division of *personal* property.

William filed a motion to dismiss the appeal, asserting that Deborah's appeal was not filed within thirty days from entry of the November 16, 1995 decree as required by Iowa rule of appellate procedure 5(a). In her resistance to William's motion to dismiss the appeal, Deborah contends a final judgment was not entered until February 6, 1997, the date the district court entered its ruling adopting the special master's report. Deborah therefore contends that her appeal was filed in a timely manner because she filed her notice of appeal within thirty days from entry of the court's February 6, 1997 ruling.

We ordered that the motion be submitted with the appeal.

### II. Whether a dissolution decree which leaves division of personal property to the parties, subject to certain guidelines, is a final judgment.

Before we address the merits of Deborah's contentions on appeal concerning the 1995 decree, we must first consider William's motion to dismiss Deborah's appeal. William asserts that Deborah's appeal was not filed within the 30-day time period required by Iowa rule of appellate procedure 5(a). We must consider the motion first because we do not have subject matter jurisdiction to consider an appeal that was not filed within the 30-day time period. *See Bellach v. IMT Ins. Co.*, 573 N.W.2d 903, 905 (Iowa 1998) (noting that appellate deadlines are mandatory and jurisdictional); *Madyun v. Iowa Dist. Ct.*, 544 N.W.2d 441, 443 (Iowa 1996) (untimely appeal deprives an appellate court of subject matter jurisdiction).

A. To determine whether Deborah's appeal was filed in a timely manner, we must first decide whether the 1995 decree was a final judgment. If it was, she should have appealed within thirty days after entry of that decree.

Our analysis starts with an examination of our rules of appellate proce-

dure. Through our cases, we have articulated certain principles concerning those rules. First, pursuant to rule 1(a), only final judgments may be appealed.[1] A final judgment is one that " 'conclusively adjudicates all of the rights of the parties,' " *In re J.J.A.*, 580 N.W.2d 731, 735 (Iowa 1998) (quoting *Rowen v. LeMars Mut. Ins. Co.*, 357 N.W.2d 579, 581 (Iowa 1984)), and places the case beyond the power of the court to return the parties to their original positions. *Ahls v. Sherwood/Division of Harsco Corp.*, 473 N.W.2d 619, 621 (Iowa 1991). Second, pursuant to rule 5(a), appeals must be filed with our court within thirty days from entry of the order, judgment or decree.[2] Any appeals not so filed will be dismissed for lack of appellate jurisdiction. *See id.* (noting that remedy is dismissal of appeal when appellate court has no jurisdiction to consider appeal).

■ We believe that our decision in the case of *In re Fenchel*, 268 N.W.2d 207 (Iowa 1978), clearly shows that the November 16, 1995 decree constitutes a final judgment. Relying on our prior decision in *Shipley v. Shipley*, 182 N.W.2d 125 (Iowa 1970), we stated in *Fenchel* that a "final decree is the one in which the marriage is terminated. If review of the provisions of that decree is desired, appeal must be taken within 30 days of its entry." 268 N.W.2d at 209.

In *Fenchel*, a dissolution decree was entered in August 1976 deciding all issues and ordering the husband to pay alimony, but it stated that alimony could be modified based on certain contingencies. More than a year after the decree was entered, the court entered a supplementary decree that modified the husband's alimony obligations. The husband appealed from the

supplementary decree, challenging alimony payments, and the wife cross-appealed from both the original and supplemental decrees. On appeal, we concluded that the wife's cross appeal, concerning matters in the original decree, was not filed in a timely manner because it was not filed within thirty days from entry of the original decree and thus we had no jurisdiction over the wife's assignments of error concerning provisions of the original decree. *Id.* We did, however, examine the merits of the supplementary decree because the husband's appeal from entry of that decree was filed in a timely manner. *Id.*

The situation in this case is almost identical to that of the parties in *Fenchel*. Here, the district court in the 1995 decree determined issues of custody, visitation, child support, spousal support, attorneys fees and costs, and divided the parties' real property, but, subject to certain guidelines, let the parties divide some of the personal property. The decree also stated that personal property items on which the parties could not agree would be sold at public auction with the proceeds to be divided equally between the parties. Thus, the November 1995 decree fully adjudicated the parties' rights that were at issue in the dissolution proceedings and reserved no issues for further determination.

The parties, however, did not follow the terms of the decree concerning division of the parties' personal property. As a result, the district court entered a supplemental order in February 1997 in a contempt action, concerning how several items of personal property should be divided. *Fenchel* clearly provides authority that entry of the final decree on November 16, 1995 constituted a final judgment for pur-

---

1. Iowa rule of appellate procedure 1(a) states in pertinent part:

   All final judgments and decisions of the district court and any final adjudication in the district court under R.C.P. 86, involving the merits or materially affecting the final decision, may be appealed to the supreme court, except as provided in this rule and in Iowa Rule of Appellate Procedure 3.

2. Iowa rule of appellate procedure 5(a) states in pertinent part:

   Except as provided by rule 20(b), Rules of Appellate Procedure, appeals to the supreme court must be taken within, and not after, thirty days from the entry of the order, judgment or decree. . . .

poses of Iowa rule of appellate procedure 1(a) and thus that date was the point at which the 30–day time period began to run concerning Deborah's right to appeal the terms of the 1995 decree. *Id.* Deborah did not file her notice of appeal until March 3, 1997, well after the thirty-day period expired following the 1995 decree. Deborah's appeal was not filed in a timely manner and we therefore have no jurisdiction to consider the issues raised therein concerning the original decree.

B.   Additionally, the fact that Deborah appealed the supplemental order within thirty days after it was entered cannot extend the time for appealing provisions of the 1995 decree. The *Fenchel* case so holds. *Id.* Accordingly, Deborah's appeal must be dismissed. *See Uchtorff v. Dahlin,* 363 N.W.2d 264, 267 (Iowa 1985) (noting that court is prohibited from enlarging the time for appeal except when allowed by Iowa rule of appellate procedure 20(b) due to failure by the clerk to notify appellant of entry of final judgment).

Deborah's appeal from the February 6, 1997 ruling was filed in a timely manner because it was filed within thirty days after that ruling was entered. In her brief, however, Deborah makes no assignment of error concerning the terms of the February 6, 1997 ruling, which more specifically divided the parties' personal property. We therefore need not examine the terms of that ruling on appeal.

### III.   Disposition.

We conclude that the original decree filed November 16, 1995, which dissolved the parties' marriage, constituted a final judgment for purposes of Iowa rules of appellate procedure 1(a) and 5(a). We further conclude that we have no jurisdiction to consider Deborah's appeal from the terms of that decree because it was not filed within thirty days after the decree was entered. We therefore dismiss the appeal. William's request for attorney fees on appeal is denied.

**APPEAL DISMISSED.**