# IN THE SUPREME COURT OF IOWA

No. 13–2044

Filed June 5, 2015

**IN RE THE MARRIAGE OF SUSAN MICHELLE THATCHER AND RONALD DEAN THATCHER**

Upon the Petition of
SUSAN MICHELLE THATCHER,

      Petitioner,

**ANNA CARSON** as Executor for the
ESTATE OF SUSAN MICHELLE THATCHER,

      Appellee,

And Concerning
**RONALD DEAN THATCHER,**
      Appellant.

---

On review from the Iowa Court of Appeals.


Appeal from the Iowa District Court for Linn County, Marsha M. Beckelman, Judge.


Appellant seeks further review of court of appeals decision dismissing his appeal of district court order granting bifurcated decree of dissolution of marriage without division of property. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT DECREE REVERSED; PROCEEDINGS ABATED; CASE REMANDED FOR DISMISSAL.**


Kerry A. Finley and Allison M. Heffern of Shuttleworth & Ingersoll, P.L.C., Cedar Rapids, for appellant.

Sherry L. Schulte of Bradley & Riley, P.C., Cedar Rapids, for appellee.

**WATERMAN, Justice.**

This appeal presents a question of first impression in Iowa: whether the district court has discretion to end a marriage through a decree of dissolution without dividing the marital property until a later judgment. This two-step process is known as a "bifurcated divorce" and is expressly allowed by statute in other states. Iowa Code chapter 598 (2013) does not expressly permit such bifurcation. Our rules of civil procedure allow separate trials of issues, but can be superseded by statute. Iowa Rs. Civ. P. 1.101, 1.914. Iowa Code section 598.21(1) states, "Upon every judgment of . . . dissolution, . . . the court shall divide the property of the parties . . . ." The parties disagree whether the marital dissolution and division of property must be contemporaneous.

In this case, a terminal cancer patient whose death was imminent filed a motion to bifurcate her dissolution proceeding. Her husband resisted. The day before her death, the district court entered an order granting the motion to bifurcate and dissolving the marriage, with the division of property to "be determined at a later date." The husband appealed, and the decedent's estate, as the substituted appellee, moved to dismiss the appeal as premature. We transferred the case to the court of appeals, which held the bifurcation order and decree of dissolution was not an appealable final judgment and did not meet the conditions for interlocutory appeal. We granted further review.

We now determine that the decree of dissolution is an appealable final judgment. For the reasons explained below, we hold section 598.21(1) requires the decree of dissolution to divide the property at the same time, which prohibits bifurcated divorces. We therefore vacate the opinion of the court of appeals and reverse the order of bifurcation and decree of dissolution. This outcome means the parties were married at

the time of the wife's death, and the dissolution proceedings abated. We remand the case for entry of an order of dismissal. The probate court will determine the division of the decedent's property.

### I. Background Facts and Proceedings.

Susan and Ronald Thatcher were married on November 10, 1984. They had one daughter, Lillian, born in 1993. In January 2013, Susan was diagnosed with cervical cancer. Her doctors told her she had a one-year life expectancy. Eight months later, on September 13, Susan filed a petition for dissolution of marriage in Linn County. She wanted to end their twenty-nine-year marriage and die unmarried. She was fifty years old. Ronald, age sixty-seven, was employed part-time as a pastor. They were living apart. Lillian, age twenty-one, was a full-time college student. Susan's petition alleged the marriage relationship had broken down and there was no likelihood the marriage could be preserved. She asked Ronald to waive the conciliation provisions. Ronald filed his answer on September 27. Ronald denied the breakdown of the marriage and that reconciliation services would be ineffective and reserved his right to counseling.

In November, each party filed an affidavit of financial status. These disclosed Susan had several life insurance policies, an inherited farm valued at $100,819, and inherited securities. Ronald cosigned Lillian's student loan of $41,000. Ronald and Susan each listed retirement accounts and bank accounts, and each listed securities owned jointly worth $76,352. Susan listed medical bills of $75,150, with insurance claims pending for $37,575. The homestead was valued at $105,000. The record is silent whether Susan had a last will and testament.

On November 22, Susan filed a motion to bifurcate dissolution. She "request[ed] that the Court dissolve the marriage of the parties at this time and that the issue of the property and debts of the parties be litigated at a later date." As grounds, she noted her terminal cancer and that her physicians told her "at this time" her experimental treatments were not working. She alleged "it is highly unlikely that she will survive her condition for a trial." She noted efforts to schedule a settlement conference, but that Ronald said "he was not available on the dates given and the next available dates were February of 2014, which is not a realistic date for [her]." She stated "she would like to have their marriage dissolved prior to her passing." Her motion cited no financial reasons or legal authority to bifurcate the marital dissolution from the property division.

The motion was set for hearing on November 26. The day before the unreported hearing, Susan supplemented her motion with correspondence from her treating physicians stating her life expectancy was "limited from days to possibly weeks." Ronald resisted the motion, arguing there is no legal basis to bifurcate the marital dissolution from a contemporaneous property division. As an alternative to bifurcation, he offered to participate in an expedited settlement conference and trial within two weeks. He stipulated to the breakdown in the marriage and waived the ninety-day waiting period. He argued bifurcation would prejudice his rights and complicate resolution of the property issues. In particular, he argued he would be forced to litigate the property division in probate court without the opportunity to depose or cross-examine Susan, lose health insurance and his status as beneficiary on her life insurance, and lose the right to file a joint tax return for 2013.

On November 27, the district court filed a two-page "Order Granting Motion to Bifurcate and Decree of Dissolution of Marriage." The court granted the motion to bifurcate "for the reasons stated in [Susan's] motion." The court also "granted a dissolution of marriage" and decreed that Ronald and Susan "are returned to their status of single persons." The order allowed the parties to transfer one bank account of approximately $10,000 to their daughter. The order otherwise provided that "all property and debts of the parties and a division thereof will be determined at a later date" and prohibited the parties from transferring assets except for ordinary living expenses and reasonable legal fees. Susan died the next day.

On December 20, Ronald filed a notice of appeal. We granted an unresisted motion to substitute Susan's estate as appellee. On February 5, 2014, Susan's estate filed a motion to dismiss the appeal as interlocutory. Ronald resisted, arguing the decree of dissolution is a final order appealable as a matter of right. Alternatively, he sought interlocutory review. We ordered the motion to dismiss to be submitted with the appeal and transferred the case to the court of appeals.

On October 21, the court of appeals dismissed the appeal, concluding the district court's order and decree was not final and appealable because it contemplated "some later act—namely, the distribution of the parties' property" to finally decide the case. The court of appeals declined to allow interlocutory review, concluding Ronald "cannot show the bifurcation order will materially affect the final decision" and noted that he may appeal from the future ruling that divides the property. We granted Ronald's application for further review.

## II. Standard of Review.

"An action for dissolution of marriage is an equitable proceeding and, consequently, this court's review is de novo." *In re Marriage of Winegard*, 257 N.W.2d 609, 613 (Iowa 1977) (reviewing appeal from bifurcated proceeding); *see also In re Marriage of Schenkelberg*, 824 N.W.2d 481, 483 (Iowa 2012) (noting de novo standard of review for "[a]ppeals regarding the dissolution of marriage"). Our review of the district court's interpretation of a statute in an equitable proceeding is for correction of errors of law. *In re Estate of Myers*, 825 N.W.2d 1, 3–4 (Iowa 2012). "Our review of district court rulings on motions to bifurcate is usually for abuse of discretion," but we may apply de novo review based on the nature of the appeal. *In re Det. of Blaise*, 830 N.W.2d 310, 315 (Iowa 2013). An abuse of discretion may be shown when the district court's ruling " 'is based on an erroneous application of the law.' " *In re A.M.*, 856 N.W.2d 365, 370 (Iowa 2014) (quoting *Office of Citizens' Aide/Ombudsman v. Edwards*, 825 N.W.2d 8, 14 (Iowa 2012)).

## III. Analysis.

We first must decide whether the district court's bifurcation order and decree of dissolution is reviewable at this time. Because we determine the dissolution decree is reviewable, we then address whether the district court erred by bifurcating the dissolution of the Thatchers' marriage from the division of property and the effect of Susan's intervening death.

**A. Is the Bifurcated Decree of Dissolution a Reviewable Final Judgment?** Susan's estate argues there is no reviewable final judgment until the district court divides the marital property. Ronald argues the decree of dissolution itself is a final judgment. The court of appeals held

that the dissolution was not a final order because it contemplated division of property at a future time.

> "As repeatedly articulated by this court, a final judgment or decision is one that finally adjudicates the rights of the parties. It must put it beyond the power of the court which made it to place the parties in their original position. A ruling or order is interlocutory if it is not finally decisive of the case."

*In re Marriage of Denly*, 590 N.W.2d 48, 50 (Iowa 1999) (quoting *Mid-Continent Refrigerator Co. v. Harris*, 248 N.W.2d 145, 146 (Iowa 1976)). The bifurcated decree in this case bears a key attribute of a final judgment; it ended the marriage of the parties. The court entered this decree while Susan's death was imminent; indeed, she died the next day. Thus, while district courts are generally free to revisit interlocutory orders to correct error, Susan's death deprived the court of the ability to place the parties back in the position of being married to each other while alive. This decree "put it beyond the power of the court which made it to place the parties in their original position." *Id.*

We have long held that the death of a party ends his or her marriage and abates the dissolution proceeding. *See In re Estate of Peck*, 497 N.W.2d 889, 891 (Iowa 1993) (stating that dissolution is a purely personal action that abates upon the death of either party "even when the disposition of significant property rights will be determined by the entry of a decree, or lack thereof"); *Oliver v. Oliver*, 216 Iowa 57, 58, 248 N.W. 233, 234 (1933) ("If [an enforceable] decree of divorce has not been entered prior to the death of a party, none can ever be entered . . . ."); *Barney v. Barney*, 14 Iowa 189, 193 (1862) (holding death of party ended appeal of dissolution decree); *see also Myers v. Myers*, 580 A.2d 384, 385–86 (Pa. Super. Ct. 1990) (holding that the death of a party abates both a pending divorce action and all economic claims); *cf. Maghee v.*

*State*, 773 N.W.2d 228, 233 (Iowa 2009) (addressing survival statutes to conclude death abates proceedings when the contested issue becomes moot in that a ruling on the underlying issue would no longer have force or effect). The death of a party in a dissolution proceeding obviates the need for a decree of dissolution because death ends the marriage. But, this case is not moot because resolution of the fighting issue—whether bifurcated divorces are allowed—will determine whether the marital property is divided in probate proceedings or under chapter 598.

Missing from the decree at issue is the final division of marital property, a matter the district court expressly reserved for a later determination. Does that unfinished business make the order interlocutory? In that respect, the bifurcated order did not finally determine the rights of the parties. The problem is that (for the reasons we explain below), the district court erred by failing to divide the property contemporaneously with its decree of dissolution as required by Iowa Code section 598.21(1). Should we now hold the very error warranting reversal of the decree of dissolution prevents appellate review to correct it until after the property is divided by the wrong court? We have held other dissolution decrees with property divisions subject to contingencies or open issues are appealable final orders. *See In re Marriage of Welp*, 596 N.W.2d 569, 571–72 (Iowa 1999); *In re Fenchel*, 268 N.W.2d 207, 209 (Iowa 1978). We hold this bifurcation order and dissolution decree, despite its reservation of the property division for later proceedings, is a final order appealable by Ronald as a matter of right. Accordingly, we will proceed with our review of that order.

**B. Does Iowa Code Section 598.21(1) Permit Bifurcated Divorces?** We begin our analysis of Iowa law by reviewing the operative statutory language in light of our canons of construction. "Our starting

point is the statutory text." *In re A.M.*, 856 N.W.2d at 371. "The goal of statutory construction is to determine legislative intent." *Auen v. Alcoholic Beverages Div.*, 679 N.W.2d 586, 590 Iowa (2004). Iowa Code chapter 598 governs the dissolution of marriage. Iowa Code section 598.21, entitled "Orders for disposition of property," states:

> 1. *General Principles. Upon every judgment of* annulment, *dissolution,* or separate maintenance, *the court shall divide the property of the parties* and transfer the title of the property accordingly, including ordering the parties to execute a quitclaim deed or ordering a change of title for tax purposes and delivery of the deed or change of title to the county recorder of the county in which each parcel of real estate is located.

Iowa Code § 598.21 (emphasis added). We conclude the plain language of this provision requires a division of property contemporaneous with the decree of dissolution. Our conclusion is reinforced by related statutory provisions, the legislative history, and precedent construing equivalent provisions. We note competing public policy arguments for and against bifurcated divorces, but conclude those arguments are best addressed to the legislature. We begin with the words of section 598.21(1).

1. *Textual analysis.* Ronald argues this statute requires the district court to divide the property at the time it enters the decree of dissolution of the marriage. We agree. "We generally 'presume words used in a statute have their ordinary and commonly understood meaning.'" *In re A.M.*, 856 N.W.2d at 371 (quoting *McGill v. Fish*, 790 N.W.2d 113, 119 (Iowa 2010)). Section 598.21(1) uses mandatory language: "Upon every judgment of . . . dissolution . . . , the court *shall* divide the property of the parties . . . ." Iowa Code § 598.21(1) (emphasis added). Our legislature has codified the rule of construction that "[u]nless otherwise specifically provided by the general assembly, . . .

[t]he word '*shall*' imposes a duty." *Id.* § 4.1(30)(*a*). "In a statute, the word 'shall' generally connotes a mandatory duty." *In re Det. of Fowler*, 784 N.W.2d 184, 187 (Iowa 2010) (recognizing word "shall" in Iowa Code section 229A.7(3) imposed mandatory duty).

Susan's estate acknowledges section 598.21(1) requires the court to divide the property, but contends the court may dissolve the marriage first and divide the property at a later date. We disagree. The statutory command begins with the words "[u]pon every judgment." The *Merriam-Webster's Collegiate Dictionary* defines "upon" to mean "on the surface," "on it," "THEREAFTER, THEREON." *Merriam-Webster's Colligate Dictionary* 1375 (11th ed. 2014). *Webster's Third New International Dictionary* has several temporal definitions for "upon," including "immediately following" and "at the time of," as well as definitions of physical location, such as "in or into close proximity or contact." *Webster's Third New International Dictionary* 2517–18 (unabr. ed. 2002). Giving the words of section 598.21(1) their ordinary meaning, "[u]pon every judgment" means "at the time of the judgment" and within the four corners of the judgment or annexed thereto. We conclude the decree ending the marriage and division of property are to be contemporaneous, not days or months apart.

Susan's estate relies on Iowa Rule of Civil Procedure 1.914, which allows the court "for convenience or to avoid prejudice, [to] order a separate trial of any claim . . . or . . . separate issue." What the district court purported to do here, and what Susan wanted, however, went beyond merely separating the trials of particular issues. Instead, on November 27, 2013, the district court purported to enter a final judgment on part of the case (i.e., whether the marriage was dissolved) without resolving the rest of it (i.e., the distribution of property). This is

different from trying the case in segments while entering a final judgment only at the end, which is what rule 1.914 authorizes. In any event, rule 1.101 makes clear that statutes may "provide different procedure in particular courts or cases." Iowa R. Civ. P. 1.101. Section 598.21(1) is such a statute and governs this bifurcation issue.

We have allowed bifurcated procedures to determine threshold issues in dissolution proceedings. *See, e.g., In re Marriage of Shanks*, 758 N.W.2d 506, 510 (Iowa 2008) (noting a bifurcated trial to determine validity of prenuptial agreement before subsequent trial on property division and remaining issues); *In re Marriage of Winegard*, 257 N.W.2d at 612–13 (allowing a bifurcated trial to determine whether common law marriage existed). In these cases, however, the dissolution of the marriage did not precede the property division. As noted above, a decree of dissolution is a final judgment.

Our rules permit separate judgments to be entered at different times against separate parties:

> Where the action involves two or more parties, the court may, in its discretion, and though it has jurisdiction of them all, render judgment for or against some of them only, whenever the prevailing party would have been entitled thereto had the action involved the prevailing party alone, or whenever a several judgment is proper; leaving the action to proceed as to the other parties.

Iowa R. Civ. P. 1.953. However, our rules of civil procedure do not allow the district court to enter serial final judgments at different times in a single action between two parties, except for collateral matters such as cost or fee awards. *See, e.g., In re Marriage of Winegard*, 257 N.W.2d at 614 (holding an order allowing temporary attorney fees in a dissolution action is a final judgment appealable as a matter of right and noting it is collateral to the main action). The marital dissolution itself and the final

division of marital property are inseparable parts of the main action that must be addressed together in the final judgment.

2. *Related statutory provisions.* Our conclusion that the property division is to be contemporaneous with the marital dissolution is reinforced by the accompanying statutory provisions. Section 598.21(5) directs the court to consider in equitably dividing the property a number of factors that contemplate both parties are living when the final decree divides the marital property. These provisions include:

> *d.* The age and physical and emotional health of the *parties.*
>
> . . . .
>
> *f.* The earning capacity of *each party,* including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children, and the time and expense necessary to acquire sufficient education or training to enable the party to become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage.
>
> *g.* The desirability of awarding the family home or the right to live in the family home for a reasonable period to *the party* having custody of the children, or if the parties have joint legal custody, to *the party* having physical care of the children.
>
> *h.* The amount and duration of an order granting support payments to *either party* pursuant to section 598.21A and whether the property division should be in lieu of such payments.
>
> *i.* Other economic circumstances of *each party,* including pension benefits, vested or unvested. Future interests may be considered, but expectancies or interests arising from inherited or gifted property created under a will or other instrument under which the trustee, trustor, trust protector, or owner has the power to remove the party in question as a beneficiary, shall not be considered.
>
> *j.* The tax consequences to *each party.*

Iowa Code § 598.21(5) (emphasis added). Death of either party would end ongoing payments for spousal or child support; resolve the question

as to which party lives in the family home; trigger pension rights and life insurance payments; and render irrelevant the custodial responsibilities, earnings, and earning capacity of the decedent.

As noted above, we have long held the death of a spouse abates the dissolution proceedings. The decedent's property is then divided in probate court. *See id.* ch. 633 (Iowa Probate Code). Nothing in chapter 598 or chapter 633 expressly retains jurisdiction to divide the marital property when a party dies after the decree of dissolution but before a final property division. We see no indication in these interrelated provisions within chapter 598 or the probate code that the legislature intended to permit bifurcated divorces. To the contrary, the structure of chapter 598, and specifically section 598.21, clearly contemplates an equitable division of property no later than the decree of dissolution.

3. *The legislative history and the Uniform Marriage and Divorce Act.* The legislative history of Iowa Code chapter 598 supports our conclusion that section 598.21(1) prohibits bifurcation of the marital dissolution and property division. Specifically, the Iowa legislature never adopted the Uniform Marriage and Divorce Act (UMDA), enacted forty-two years ago, which expressly permits bifurcation of the dissolution decree and property division. Unif. Marriage & Divorce Act § 302(a)(4) (amended 1973), 9 U.L.A. 200–01 (1998) (allowing entry of a decree of dissolution after the court has considered or approved "the disposition of property; or has provided for a *separate, later* hearing to complete these matters" (emphasis added)). We conclude the fact that the Iowa legislature chose not to adopt the Uniform Act is significant:

> We can determine legislative intent from selective enactment or divergence from uniform acts. We presume the Iowa legislature was aware of, but declined to follow, the [Uniform Probate Code]'s dower provision because it chose to

shield the dower interest in all real estate from the estate's creditors.

*Freedom Fin. Bank v. Estate of Boesen*, 805 N.W.2d 802, 814 (Iowa 2011) (citations omitted). Similarly, we conclude the "Iowa legislature was aware of, but declined to follow," the UMDA and its provision allowing bifurcated divorces. *Id.*

Eight states adopted the UMDA. James Burd, Note, *Splitting the Marriage in More Ways than One: Bifurcation of Divorce Proceedings*, 30 J. Fam. L. 903, 905 (1992). Six of those states adopted the provision allowing bifurcated divorces. *Id.* at n.12 (noting that Arizona, Colorado, Illinois, Kentucky, Minnesota, Missouri, Montana, and Washington adopted the Act, but Arizona and Kentucky deleted the provision permitting bifurcation). The Colorado statute varies from the language of the UMDA, but expressly allows bifurcated divorces, stating:

> [The] disposition of property may be deferred by the court until after the entry of the decree of dissolution of marriage or the decree of legal separation upon a finding that a deferral is in the best interests of the parties.

Colo. Rev. Stat. Ann. § 14-10-106(1)(b) (West, Westlaw current through various chapters 1st Reg. Sess. 2015).

Other state statutes expressly allow bifurcated divorces. *See, e.g.*, Cal. Fam. Code § 2337(a) (West, Westlaw current through ch. 2 of 2015 Reg. Sess.) ("In a proceeding for dissolution of marriage, the court, upon noticed motion, may sever and grant an early and separate trial on the issue of the dissolution of the status of the marriage apart from other issues."); 750 Ill. Comp. Stat. Ann. 5/401(b) (West, Westlaw current through P.A. 99-3 of 2015 Reg. Sess.) ("The court may enter a judgment for dissolution that reserves any of these issues either upon (i) agreement of the parties, or (ii) motion of either party and a finding by the court that

appropriate circumstances exist."); Ind. Code Ann. § 31-15-2-14 (West, Westlaw current through 2015 Reg. Sess. with effective dates through April 29, 2015) ("The court may bifurcate the issues in an action for dissolution of marriage . . . to provide for a summary disposition of uncontested issues and a final hearing of contested issues."). Similarly, New Jersey allows bifurcated proceedings under limited circumstances through a court rule:

> Bifurcation of trial of the divorce, dissolution of civil union, termination of domestic partnership or custody dispute from trial of disputes over support and equitable distribution shall be permitted only with the approval of the Family Presiding Judge, which approval shall be granted only in extraordinary circumstances and for good cause shown.

N.J. Ct. R. § 5:7-8 (West, Westlaw current with amendments through April 15, 2015). We presume the Iowa legislature, if it chose to allow bifurcated divorces, would have enacted a provision expressly allowing the procedure, as did these sister states.

4. *Precedent.* Other courts have interpreted statutory language like Iowa's to prohibit bifurcated divorces. Section 598.21(1) contains operative language similar to the statute in the District of Columbia.

> *Upon entry of a final decree of* legal separation, annulment, or *divorce,* or upon the termination of a domestic partnership pursuant to § 32-702(d) and the filing of a petition for relief available under this section, in the absence of a valid antenuptial or postnuptial agreement resolving all issues related to the property of the parties, *the court shall:*
>
> *(a) assign to each party his or her sole and separate property . . . .*

D.C. Code § 16-910 (Westlaw current through May 7, 2015) (emphasis added). The District of Columbia Court of Appeals interpreted that provision to require a division of property contemporaneous with the marital dissolution. *Davis v. Davis,* 957 A.2d 576, 581 (2008). In that

case, the husband lived in the forum, but the wife lived elsewhere. *Id.* at 578–79. He filed a dissolution proceeding without an adjudication of property rights. *Id.* His wife moved to dismiss his petition on several grounds, including lack of personal jurisdiction and forum non conveniens. *Id.* The trial court dismissed the action, reasoning that a divorce without an adjudication of property rights was not allowed under section 16-910. *Id.* at 579. The D.C. Court of Appeals agreed,[1] stating:

> [I]n a divorce proceeding where the Superior Court has personal jurisdiction over both parties, the court *must in the same proceeding* value and distribute marital property located in the District and determine and adjudicate rights in marital property located elsewhere.

*Id.* at 581 (emphasis added) (citing *Argent v. Argent,* 396 F.2d 695, 698 (D.C. Cir. 1968)). As noted in *Domestic Relations Manual for the District of Columbia,*

> the text of the statute appears to prohibit the court from bifurcating the dissolution judgment from the equitable distribution portion of the trial and granting a divorce or legal separation while reserving equitable distribution issues to be determined at a later date.

Diane M. Brenneman & Linda J. Ravdin, *Domestic Relations Manual for the District of Columbia* § 4.03[1]; *accord Davis*, 957 A.2d at 580 n.7.

We reach the same conclusion under Iowa Code section 598.21(1). Susan's estate cites no decision from any jurisdiction allowing a bifurcated divorce under a statute comparable to section 598.21(1), and we found no such decision in our independent research.

---

[1]The court of appeals vacated and remanded the case on other grounds, including a failure by the trial court to determine whether personal jurisdiction existed. *Davis*, 957 A.2d at 581, 584.

Susan did not raise the court's inherent authority in her motion to bifurcate, nor did the district court purport to rely on inherent authority in its bifurcation ruling. Moreover, Susan's estate does not rely on inherent authority on appeal as an alternative basis to affirm the bifurcation ruling. Accordingly, we do not reach that issue. *See Aluminum Co. of Am. v. Musal,* 622 N.W.2d 476, 479 (Iowa 2001).

5. *Policy considerations.* Courts in other jurisdictions have addressed the policy considerations that disfavor bifurcating the dissolution decree from the property division. The Illinois Supreme Court noted deciding those matters contemporaneously

> encourages the court to decide all matters incident to the dissolution in a single judgment, to the fullest extent of its authority, in order to achieve finality, promote judicial economy, and avoid multiple litigations and complications which can result from the entry of partial judgments, particularly judgments which dissolve the marriage but 'reserve' remaining issues for later determination.

*In re Marriage of Cohn,* 443 N.E.2d 541, 544 (Ill. 1982) (internal quotation marks omitted); *see also In re Marriage of Mathis*, 986 N.E.2d 1139, 1149 (Ill. 2012) (same). Conversely, a bifurcated divorce raises a multitude of problems:

> Further, irrespective of whether the grounds are contested, entry of a bifurcated judgment of dissolution presents many potential complications. For example, . . . the court could likely be required to adjudicate marital property rights that have become entangled with the supervening rights of third parties, including subsequent spouses. Additionally, entering a judgment of dissolution prior to property disposition would complicate, rather than simplify, matters with respect to the rights of a surviving spouse in the event of an intervening death. Other complications that can ensue if a judgment of dissolution is not deferred until disposition of the other matters include the loss of ability to file joint income tax returns, the loss of medical insurance coverage, and the loss of marital-property treatment for property accumulated during the intervening period between

the entry of the judgment of dissolution and the final disposition of property rights.

*In re Marriage of Cohn,* 443 N.E.2d at 545. Therefore, states that allow bifurcation by statute have restricted the procedure:

> The appropriate circumstances for bifurcating a judgment, as referenced in section 401(b) and enumerated in *Cohn,* are narrowly drawn. If trial courts were allowed unfettered discretion to bifurcate a judgment of dissolution, the inequities and complications envisioned by this court in *Cohn* would result.

*In re Marriage of Bogan,* 506 N.E.2d 1243, 1246 (Ill. 1986). *See* 27A C.J.S. *Divorce* § 327, at 464–66 (2005) (collecting cases and reviewing factors for bifurcation). The Florida Supreme Court cautioned:

> Although we approve the granting of this final dissolution with a reservation of jurisdiction to subsequently determine property, custody, and support issues, we believe trial judges should avoid this split procedure. The general law and our procedural rules at both the trial and appellate levels are designed for one final judgment and one appeal. Splitting the process can cause multiple legal and procedural problems which result in delay and additional expense to the litigants. This split procedure should be used only when it is clearly necessary for the best interests of the parties or their children. The convenience of one of the parties for an early remarriage does not justify its use.

*Claughton v. Claughton,* 393 So. 2d 1061, 1062 (Fla. 1980). Another court elaborated as follows:

> [T]here are many disadvantages related to bifurcation. If the cases are not settled by the parties, then oftentimes two hearings are necessary, thus burdening an already overcrowded court calendar. Also, despite the fact that divorce is achieved rapidly, there is still a significant delay in the resolution of economic issues, thus having a dilatory effect on the parties' efforts to reshape their lives. From a tax standpoint, bifurcation prevents the parties from filing a joint federal income tax return and therefore a favorable tax rate is unavailable.
>
> Another problem which arises where a case has been bifurcated involves the impact that the death of one of the parties, subsequent to the issuance of the divorce decree but

prior to a determination of the economic issues, has on the surviving spouse's right to equitable distribution. . . .

Still another issue which could arise relates to the effect that a bifurcated divorce has on a divorced spouse's right to receive the proceeds of a life insurance policy in which that spouse was named a beneficiary. . . . Undoubtedly, to this list of detriments associated with bifurcation, numerous other possibilities can be added.

*Wolk v. Wolk*, 464 A.2d 1359, 1361–62 (Pa. Super. Ct. 1983) (footnotes omitted) (citations omitted).

A commentator summarized the advantages and disadvantages of bifurcated divorces as follows:

Where available, bifurcation may be desirable due to the greater likelihood of preserving a court's jurisdiction over matters incidental to divorce. As with most public policy discussions involving the judicial system, there are trade-offs that may be equally undesirable for the same reasons.

Bifurcating trials may allow parties to remarry at an earlier date, provide certain tax advantages (or disadvantages), and give parties the psychological benefit of putting the marriage to an end as soon as possible. Without bifurcation, and where complex property settlement or support issues are concerned, parties may be held in a state of indefinite limbo. Also, bifurcation may prevent a party in a superior financial position from leveraging the weaker party out of an equitable settlement agreement with the threat of a long, drawn out divorce trial.

However, some commentators believe that the disadvantages of bifurcation greatly outweigh the advantages. Many times the bifurcation will have the opposite of the desired effect, actually increasing the length of the trial—firstly, because the proceeding will necessarily require two separate trials, and secondly, without the dissolution incentive, property issues may be disputed almost endlessly. Furthermore, subsequent marriages will be plagued with unforeseen liabilities and the emotional turmoil of continuing disputes between prior spouses, nullifying the intended advantages of bifurcation.

In bifurcated proceedings, the period between the original granting of dissolution and the rendering of the final decree is a breeding ground for conflict. Questions arise as to when certain rights and obligations associated with marriage are severed and these questions lead to increased disputes, specifically in areas such as insurance coverage, tax status and liability, and bankruptcy. And there is no

> doubt that bifurcation leads to jurisdictional peculiarities and an array of unpredictable results when a party dies during the course of the proceeding.

Brandon Carney, Comment, *Till Death Do Us Part—And Then Some: The Effect of a Party's Death During Dissolution*, 25 J. Am. Acad. Matrim. Law. 153, 165–67 (2012) (footnotes omitted).

We share the policy concerns raised by our sister state courts and commentators. Ronald's resistance to Susan's motion to bifurcate argued he would be prejudiced by the bifurcation, including loss of the right to file a joint tax return for 2013; possible loss of health and life insurance coverage; disinheritance; and loss of his right to claim his spousal elective share of Susan's estate in probate under Iowa Code section 633.238 (allowing one-third share), which would include the farm she inherited not otherwise subject to equitable division under section 598.21(5) ("The court shall divide all property, except inherited property . . . ."). Other cases may present myriad additional complications arising from death, remarriage, or mere passage of time between the decree of dissolution and final division of property. Who gains and who loses when property plummets or surges in value between the marital dissolution and the subsequent order dividing the property? Marital property typically is valued as of the date of the trial. *See In re Marriage of Keener*, 728 N.W.2d 188, 193 (Iowa 2007) ("The assets should then be given their value as of the date of trial."). Courts are divided in selecting the valuation date in bifurcated divorces. The Illinois Supreme Court recently adjudicated that question in *In re Marriage of Mathis*. After reviewing precedent and competing policy considerations, a narrow majority held marital property is to be valued as of the date of the marital dissolution. *In re Marriage of Mathis*, 986 N.E.2d at 1148. Three justices dissented, concluding property should be valued as of the date of the

division of property. *Id.* at 1163 (Garman, J., dissenting). If we open the door to bifurcated divorces, we would have to answer that question among many others.

Some cases will present an urgent request for an expedited divorce. Here, Susan wanted to die unmarried, and her death was imminent. Others may be eager to remarry. The new spouse's involvement may complicate the property division and other issues. To allow a bifurcated divorce would remove the incentive to expeditiously resolve all issues and would result in motion practice to determine whether bifurcation is appropriate for a particular case. Bifurcation would thereby require at least one or more additional court hearings and prolong the case. The cure (bifurcation) may be worse than the disease (delays in resolving dissolutions). Our district courts already have discretion to allow an expedited hearing to decide the final property division and marital dissolution contemporaneously. A party who would be unfairly prejudiced by a delay in ending a marriage, or who is held hostage by a recalcitrant spouse, can seek an expedited final hearing without a bifurcation.

The Iowa legislature is the appropriate body to make the policy judgments on whether to allow bifurcated divorces and, if so, under what conditions. We will not adopt the procedure through the guise of statutory interpretation. *See Kakinami v. Kakinami*, 260 P.3d 1126, 1132–33 (Haw. 2011) (declining to revise standard prescribed by legislature for allowing bifurcated divorces). We agree with the Hawaiʻi Supreme Court that "[i]t is not the role of [the] court to alter a statutory requirement in order to effect policy considerations that are vested in the legislature." *Id.* at 1133 (internal quotation marks omitted). Rather,

"[p]olicy arguments to amend the statute should be directed to the legislature." *In re Estate of Whalen,* 827 N.W.2d 184, 194 (Iowa 2013).

## IV. Disposition.

For these reasons, we hold the bifurcated decree of dissolution is a reviewable final order that erroneously failed to divide the marital property. That error requires reversal and a remand for an order dismissing this dissolution action that abated upon Susan's death.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT DECREE REVERSED; PROCEEDINGS ABATED; CASE REMANDED FOR DISMISSAL.**

All justices concur except Zager, J., Cady, C.J. and Hecht, J., who concur specially.

**ZAGER, Justice (concurring specially).**

Although I agree with the result reached by the majority in this case, I write separately because in my opinion the court has the inherent authority to bifurcate the entry of a decree of dissolution of marriage with the entry of a supplemental order concerning the division of property. Further, while I agree with the majority that the legislature may have the ability to limit the court's authority to bifurcate these proceedings, the legislature has not done so here. Unlike the majority, I do not read Iowa Code section 598.21(1) (2013) to require the court to divide marital property contemporaneously with the entry of the dissolution decree. Ultimately, however, I believe the district court abused its discretion by granting the motion to bifurcate dissolution in this case. Accordingly, although on different grounds, I agree that the order granting motion to bifurcate should be reversed and the case remanded for an order dismissing this dissolution action that abated upon Susan's death.

As we have previously recognized:

> It is fundamental to our system of government that the authority for courts to act is conferred by the constitution or by statute. Yet, it is equally fundamental that in addition to these delegated powers, courts also possess broad powers to do whatever is reasonably necessary to discharge their traditional responsibilities. This type of judicial authority is known as inherent power, and it is derived from the separation of powers between the three branches of government, as well as limited by it.

*State v. Hoegh*, 632 N.W.2d 885, 888 (Iowa 2001) (citation omitted). Courts possess this inherent authority in a number of areas. *See, e.g., State v. Iowa Dist. Ct.*, 750 N.W.2d 531, 534 (Iowa 2008) ("Of course, when a court is acting within its jurisdiction it always has the inherent authority to do what is reasonably necessary for the administration of

justice in a case before the court."); *In re K.N.*, 625 N.W.2d 731, 734 (Iowa 2001) (acknowledging district courts' "authority to ensure the orderly, efficient, and fair administration of justice"); *Johnson v. Miller*, 270 N.W.2d 624, 626 (Iowa 1978) (recognizing district courts' authority "to adopt rules for the management of cases on their dockets"); *Iowa Civil Liberties Union v. Critelli*, 244 N.W.2d 564, 569–70 (Iowa 1976) (recognizing district courts' "inherent common-law power" to promulgate a local rule of criminal procedure); *Peters v. Peters*, 249 Iowa 110, 114, 86 N.W.2d 206, 209 (1957) ("In Iowa separate maintenance has not been a statutory remedy, and authority to grant that relief has been based upon the inherent power of courts of equity."); *Hardenbergh v. Both*, 247 Iowa 153, 159, 73 N.W.2d 103, 106 (1955) ("[The] enforcement [of discovery] was an original and inherent power of a court of equity."); *Brooks v. Paulson*, 227 Iowa 1359, 1361, 291 N.W. 144, 145 (1940) ("It is so well recognized that a court of Equity has the inherent power, in its discretion, to consolidate causes pending therein for the purpose of avoiding a multiplicity of suits, that citations are hardly necessary."); *In re Marriage of Ihle*, 577 N.W.2d 64, 67 (Iowa Ct. App. 1998) (recognizing inherent authority of trial judge to impose reasonable time limits on trial).

In my opinion, and as other courts have concluded, this inherent authority includes the authority to bifurcate dissolution and property division proceedings. *See, e.g.*, *Kronberg v. Kronberg*, 623 A.2d 806, 813 (N.J. Super. Ct. Ch. Div. 1993) (" '[E]ven without the express authorization of the Legislature, New Jersey courts may decide whether it is in the best interests of the parties to permit a separate trial of ancillary matters after a divorce has been granted.' " (quoting *Leventhal v. Leventhal*, 571 A.2d 348, 351 (N.J. Super. Ct. Ch. Div. 1989))); *Sharp v.*

*Sharp,* 351 S.E.2d 799, 800 (N.C. Ct. App. 1987) (allowing bifurcation after concluding statute did not limit court's authority to bifurcate); *Rogers v. Damron,* 479 S.E.2d 540, 543 (Va. Ct. App. 1997) ("When it enacted Code § 20–109.1, the General Assembly was presumably aware of a divorce court's inherent equity power to adjudicate separately the issues associated with a divorce."). This conclusion is further buttressed by the fact that we have allowed bifurcated procedures to determine other issues in dissolution proceedings. *See, e.g.,* *In re Marriage of Shanks*, 758 N.W.2d 506, 510 (Iowa 2008) (allowing bifurcated trial to determine validity of prenuptial agreement before subsequent trial on property division and remaining issues); *In re Marriage of Winegard*, 257 N.W.2d 609, 612–13 (Iowa 1977) (allowing bifurcated trial to determine whether common law marriage existed).

I recognize that "some inherent powers may be controlled or restricted by statute." *Hoegh*, 632 N.W.2d at 889. However, "[a] statute will not abrogate an inherent power of the court absent *clear* legislative intent." *Id.* (emphasis added). Unlike the majority, I cannot conclude the legislature has enacted a statute that clearly demonstrates its intent to limit the inherent authority of the court to bifurcate dissolution proceedings.

The statute itself tends to support the conclusion that bifurcation can occur. In relevant part, Iowa Code section 598.17 provides:

> A decree dissolving the marriage may be entered when the court is satisfied from the evidence presented that there has been a breakdown of the marriage relationship to the extent that the legitimate objects of matrimony have been destroyed and there remains no reasonable likelihood that the marriage can be preserved.

Nothing in this section requires the court to address all issues involved in dissolution proceedings within the decree. Nor is there *clear* language

in this section that prohibits the court from entering a decree dissolving the marriage between the parties and reserving resolution of the remaining issues for a later date. *See Hoegh*, 632 N.W.2d at 889. In fact, it is not unusual for the parties to request such a bifurcation at the conclusion of the trial. Given trial judges' busy schedules, everyone understands that it could take the court months to resolve all of the issues. *See* James Burd, Note, *Splitting the Marriage in More Ways than One: Bifurcation of Divorce Proceedings*, 30 J. Fam. L. 903, 909 (1992) [hereinafter Burd] (noting that "the time required to dissolve a marriage is substantially less than the time consumed by the disposition of marital property"). There are numerous circumstances in which the immediate entry of a decree dissolving the marriage may be necessary. *See id.* (identifying advantages of bifurcation); *accord* Brandon Carney, Comment, *Till Death Do Us Part—and Then Some: The Effect of a Party's Death During Dissolution*, 25 J. Am. Acad. Matrim. Law. 153, 165–66 (2012) (same). Trial judges should not be precluded from granting such requests, and the statute does not clearly prohibit it.

The majority also cites Iowa Code section 598.21(1) in support of its perceived restriction on the court's ability to bifurcate these proceedings. This section provides:

> Upon every judgment of annulment, dissolution, or separate maintenance, the court shall divide the property of the parties and transfer the title of the property accordingly, including ordering the parties to execute a quitclaim deed or ordering a change of title for tax purposes and delivery of the deed or change of title to the county recorder of the county in which each parcel of real estate is located.

Iowa Code § 598.21(1). From the plain language of the statute, the majority concludes two things. First, it concludes the statutory language "shall" requires the court to divide the marital property as part of the

dissolution proceedings. I agree with this proposition. Second, it concludes the statutory language "upon every judgment" requires that the court contemporaneously enter its property division order when it enters the dissolution decree; it emphasizes the statutory word "upon," asserting this language imposes a temporal limitation. For several reasons, I disagree with this latter conclusion.

As the majority notes, *Webster's Third New International Dictionary* contains several temporal definitions for "upon," including "immediately following on" and "at the time of." *Webster's Third New International Dictionary* 2517–18 (unabr. ed. 2002). But this is not the only definition of "upon," that can also mean "thereafter" or be used to represent "an action or condition that is beginning." *Id.* In my opinion, the plain language of this section simply means that as a condition of every dissolution, the court must divide the marital property. It could be immediately following the entry of the decree of dissolution or sometime thereafter. The entry of a decree of dissolution triggers the court's obligation to divide the marital property. But nowhere does the statute *clearly* establish that division of the marital property is a condition precedent to dissolving the marriage. *See Hoegh*, 632 N.W.2d at 889. In my opinion, the majority's reliance on the word "upon" as demonstrating a *clear* legislative intent against bifurcation is extremely weak.

Perhaps because of its shaky textual analysis, the majority looks to other sources to support its conclusion. First, it turns to Iowa Code section 598.21(5) which, to quote the majority, "directs the court to consider in equitably dividing the property a number of factors that contemplate both parties are living when the final decree divides the marital property." From this, the majority concludes the structure of section 598.21 clearly contemplates an equitable division of property no

later than the decree of dissolution. But the majority selectively omits portions of section 598.21(5) that do not necessarily contemplate living parties. Other considerations a court is to consider in equitably distributing marital property include:

> *a.* The length of the marriage.
> *b.* The property brought to the marriage by each party.
> *c.* The contribution of each party to the marriage, giving appropriate economic value to each party's contribution in homemaking and child care services.
> . . . .
> *e.* The contribution by one party to the education, training, or increased earning power of the other.
> . . . .
> *k.* Any written agreement made by the parties concerning property distribution.
> *l.* The provisions of an antenuptial agreement.
> *m.* Other factors the court may determine to be relevant in an individual case.

Iowa Code § 598.21(5). Death of a party would not significantly alter the length of the marriage (given that the parties are seeking to dissolve it); affect the property brought to the marriage by each party; change the contribution of each party to the marriage; modify the contribution by one party to the education, training, or increased earning power of the other; or rewrite any written agreement made by the parties concerning property distribution or the provisions of any antenuptial agreement. Moreover, this is a nonexhaustive list. *See id.* § 598.21(5)(*m*). I do not see how the fact that some of the considerations contained in this nonexhaustive list contemplate living parties, while others do not, cuts in either direction with respect to the legislature's intent regarding the authority of the court to bifurcate these proceedings.

Next, the majority looks to the Uniform Marriage and Divorce Act (UMDA), which expressly permits bifurcation of the dissolution decree and property division. *See* Unif. Marriage & Divorce Act § 302(a)(4) (amended 1973), 9 U.L.A. 200–01 (1998). It assumes the legislature was aware of the UDMA's bifurcation provision, but expressly declined to follow it. In so concluding, the majority invokes the following principle: "We can determine legislative intent from selective enactment or divergence from uniform acts." *Freedom Fin. Bank v. Estate of Boesen*, 805 N.W.2d 802, 814 (Iowa 2011). Notably, however, it does not apply this principle.

This principle would apply if the legislature had adopted some of the provisions of the UDMA but not others. In that case, it might be reasonable to infer the legislature considered the UDMA but declined to follow some of its provisions. For example, we have applied this principle in interpreting the Iowa Probate Code because "[t]he Iowa legislature has selectively incorporated several provisions from the [Uniform Probate Code (UPC)] into our state's probate code." *Id.* at 813. Because of this, in *Boesen* we concluded the fact that the legislature never adopted the UPC's dower provision evidenced its intent that we not interpret Iowa's dower provision consistent with the UPC. *Id.* at 813–14. But here, the majority cannot point to *any* provision of the UDMA that the Iowa legislature has adopted. In my opinion, absent some objective indication the legislature actually considered the UDMA and expressly accepted some provisions and rejected others, the mere fact that a uniform act exists and addresses a particular issue proves nothing about the legislature's intent on the issue.

The majority also looks to the statutes of other states, some of which expressly allow for bifurcated divorces. *See, e.g.*, Cal. Fam. Code § 2337(a) (West, Westlaw current through ch. 2 of 2015 Reg. Sess.) ("In a proceeding for dissolution of marriage, the court, upon noticed motion, may sever and grant an early and separate trial on the issue of the dissolution of the status of the marriage apart from other issues."); 750 Ill. Comp. Stat. Ann. 5/401(b) (West, Westlaw current through P.A. 99-3 of 2015 Reg. Sess.) ("The court may enter a judgment for dissolution that reserves any of these issues either upon (i) agreement of the parties, or (ii) motion of either party and a finding by the court that appropriate circumstances exist."); Ind. Code Ann. § 31-15-2-14(a) (West, Westlaw current through 2015 Reg. Sess. with effective dates through April 29, 2015) ("The court may bifurcate the issues in an action for dissolution of marriage . . . to provide for a summary disposition of uncontested issues and a final hearing of contested issues."). The majority then assumes the legislature was aware of these statutory provisions allowing for bifurcated divorces, carefully debated the pros and cons, and consciously declined to adopt similar legislation. However, some state legislatures have prohibited bifurcation. *See, e.g.*, Ark. Code Ann. § 9-12-315(a) (West, Westlaw current through April 8, 2015 of Reg. Sess.) ("At the time a divorce decree is entered . . . [a]ll marital property shall be distributed . . . ."); Wash. Rev. Code Ann. § 26.09.050(1) (West, Westlaw current with legislation effective through May 11, 2015) ("In entering a decree of dissolution of marriage or domestic partnership . . . the court shall . . . make provision for the disposition of property and liabilities of the parties . . . ."). Why not impute that knowledge to the legislature, assume it was aware of statutory provisions *prohibiting* bifurcated divorces, and

conclude it consciously declined to adopt a similar one?  The truth is, the legislature has done neither.

The majority also cites a number of policy considerations that disfavor bifurcation in support of its conclusion that bifurcated divorces are prohibited under Iowa law.  It then concludes the legislature is the appropriate body to make policy judgments on whether to allow bifurcated divorces and, if so, under what conditions.  This analysis is backwards.  Absent a clear legislative enactment to the contrary, the court has the inherent authority to bifurcate dissolution and property division proceedings.  Clearly, these policy considerations might be relevant in assessing whether a court abused its discretion in deciding whether to bifurcate these proceedings in a particular case.  However, they should not implicitly guide this court's statutory construction.  We should not read this prohibition into the statute under the guise of construction.  *See Clarke Cnty. Reservoir Comm'n v. Abbott*, 862 N.W.2d 166, ___ (Iowa 2015) ("We will not write such a provision into the statute in the guise of interpretation."); *Doe v. Iowa Dep't of Human Servs.*, 786 N.W.2d 853, 858 (Iowa 2010) ("We may not extend, enlarge, or otherwise change the meaning of a statute under the guise of construction."); *see also In re Det. of Geltz*, 840 N.W.2d 273, 276 (Iowa 2013) (" 'When a statute is plain and its meaning clear, courts are not permitted to search for meaning beyond its express terms.' " (quoting *State v. Chang*, 587 N.W.2d 459, 461 (Iowa 1998))); *McGill v. Fish*, 790 N.W.2d 113, 118 (Iowa 2010) ("We do not search for legislative intent beyond the express language of a statute when that language is plain and the meaning is clear.").

Moreover, it is significant that Iowa is a no-fault divorce state.  *See In re Marriage of Dawson*, 214 N.W.2d 131, 132 (Iowa 1974) (recognizing

that Iowa is a no-fault divorce state). Thus, the legislature has generally endorsed the view that preserving unworkable marriages is disfavored and correspondingly that it prefers the swift resolution of such matters. *See In re Marriage of Cooper*, 769 N.W.2d 582, 587 (Iowa 2009) ("Indeed, our no-fault divorce law is designed to limit acrimonious proceedings."). In certain circumstances, bifurcation can further this objective. Specifically, bifurcation can "accelerate[] the dissolution of a marriage found to be irretrievably broken since the time required to dissolve a marriage is substantially less than the time consumed by the disposition of marital property." *See* Burd, 30 J. Fam. L. at 909. This can allow the parties to "begin restructuring their lives," and can "encourage[] parties to settle between the marriage dissolution and the time the property is distributed by the court." *Id.*; *accord Wolk v. Wolk*, 464 A.2d 1359, 1360–61 (Pa. Super. Ct. 1983). This counsels against reading Iowa Code section 598.21(1) as uniformly prohibiting bifurcation. *See* Burd, 30 J. Fam. L. at 905 ("No-fault divorce laws provide the strongest policy arguments for bifurcation.").

Finally, I fear the majority's broad-sweeping rule will preclude bifurcation under all circumstances. This, even when both parties mutually agree to bifurcation, the court is presented with substantial evidence supporting the need for bifurcation, and after careful consideration, the court is convinced bifurcation is necessary to do justice between the parties. In this case, one party moved to bifurcate the proceedings and the other party objected. However, if both parties had consented to the bifurcation, I see no impediment to the court allowing a bifurcated procedure. As noted above, bifurcation can, under certain circumstances, be beneficial. If both parties agree to the

procedure, I see no statutory impediment depriving the court of this authority and the litigants of the potential benefits.[2]

Courts have the inherent authority to bifurcate the entry of a dissolution decree with division of property proceedings absent some clear legislative enactment to the contrary.  Unlike the majority, I cannot conclude Iowa Code section 598.21(1) *clearly* prohibits the court from bifurcating the dissolution decree and property division proceedings.  Notwithstanding, "courts can only exercise inherent authority out of genuine necessity, not merely theoretical circumstances."  *Hoegh*, 632 N.W.2d at 890.  Ordinarily, we review a district court's decision to bifurcate issues for an abuse of discretion.  *See State v. Helmers*, 753 N.W.2d 565, 567 (Iowa 2008); *State v. Jenkins*, 412 N.W.2d 174, 176 (Iowa 1987); *Briner v. Hyslop*, 337 N.W.2d 858, 870 (Iowa 1983).  " 'A court abuses its discretion when it exercised its discretion on "grounds or for reasons clearly untenable or to an extent clearly unreasonable." ' "  *Helmers*, 753 N.W.2d at 567 (quoting *In re J.A.L.*, 694 N.W.2d 748, 751 (Iowa 2005)).  Under the facts of this case, I would find that the district court abused its discretion in granting the motion to bifurcate dissolution.

Susan's motion to bifurcate dissolution was resisted by Ronald.  Although there was a hearing on the motion, it was unreported.  *See Hoegh*, 632 N.W.2d at 890 (noting that courts should develop a record to

---

[2]In some jurisdictions, even if a statute or caselaw generally prohibits bifurcation, courts permit split proceedings upon the mutual request of the parties. *See, e.g.*, *Forrest v. Forrest*, 649 S.W.2d 173, 174 (Ark. 1983) ("[W]e see no reason why, if the parties so desire and specifically agree, that the trial court cannot postpone the division of the property until a later date."). *But see, e.g.*, *Yeo v. Yeo*, 543 N.W.2d 62, 64 (Mich. Ct. App. 1995) (holding parties' joint stipulation to bifurcated procedure was of no consequence because of court rule prohibiting bifurcation).

support exercise of inherent powers); *Webster Cnty. Bd. of Supervisors v. Flattery*, 268 N.W.2d 869, 876–77 (Iowa 1978) (same). The district court's order granting motion to bifurcate reveals that it heard no testimony concerning the issue; instead, it relied on the statements of counsel, Susan's motion, as supplemented, and Ronald's resistance. The district court summarily granted the motion one day after the hearing without explanation other than "for the reasons stated in [Susan's] Motion." These reasons included: (1) that a trial date had not been set, and Susan had very little time left such that she was unlikely to "survive her condition for a trial in [the] matter"; and (2) that "she would like to have [the] marriage dissolved prior to her passing." The decision whether to bifurcate cannot be made in such a summary fashion. This was not a joint request by the parties to bifurcate. As the parties' briefs make abundantly clear, the substantial rights of each of the parties were affected by the decision. The decision also had dramatic economic consequences for the parties. *Compare* Iowa Code § 598.21(5) (requiring the court to divide marital property equitably between the parties), *with id.* § 633.236 (establishing right to elective share for surviving spouse). The entry of a decree dissolving a marriage leads to direct and immediate statutory consequences. As noted earlier in this opinion, this is not a circumstance where bifurcation would further the interests of justice between the parties. In my opinion, there was insufficient support for the district court's exercise of its discretion on the issue of bifurcation. The lack of a sufficient record or explanation demonstrating that the district court thoughtfully exercised its discretion leads me to conclude it abused its discretion in granting the motion to bifurcate dissolution.

For these reasons, I agree with the majority that the district court's order granting motion to bifurcate should be reversed and the case

remanded for an order dismissing this dissolution action that abated upon Susan's death. However, I cannot sign on to the majority's new, broad-sweeping interpretation of the Iowa Code that prohibits the court from bifurcating dissolution proceedings in all cases.

Cady, C.J. and Hecht, J. join this special concurrence.