# IN THE COURT OF APPEALS OF IOWA

No. 17-1664
Filed September 12, 2018

**IN RE THE MARRIAGE OF MARY LOU ERNST-WOODHOUSE
AND DONALD J. WOODHOUSE**

**Upon the Petition of
MARY LOU ERNST-WOODHOUSE,**
    Petitioner-Appellee,

**And Concerning
DONALD J. WOODHOUSE,**
    Respondent-Appellant.
_____

Appeal from the Iowa District Court for Hamilton County, Timothy J. Finn, Judge.

Donald Woodhouse appeals the economic provisions of the decree dissolving his marriage to Mary Lou Ernst-Woodhouse. **AFFIRMED AS MODIFIED.**

Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, PC, West Des Moines, for appellant.

Bernard L. Spaeth, Jr. and Kimberly S. Bartosh of Whitfield & Eddy, PLC, Des Moines, for appellee.

Considered by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**DOYLE, Judge.**

Dr. Donald Woodhouse appeals the economic provisions of the decree dissolving his marriage to Dr. Mary Lou Ernst-Woodhouse.[1] Although the parties stipulated to most of the issues before the district court, they were unable to reach an agreement on a few of the assets accumulated during their twenty-three-year marriage. On appeal, we review the district court's determinations regarding two of these assets and the overall fairness of the property division. We also determine whether Donald is entitled to a child support credit for extraordinary visitation.

We review dissolution actions de novo. *See In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016). Although we examine the entire record and adjudicate the issues anew, we give weight to the district court's factual findings, especially with respect to the credibility of the witnesses. *See In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013); *see also* Iowa R. App. P. 6.904(3)(g). This is because the district court, in making its credibility assessment, has the distinct advantage of listening and observing each witness's demeanor firsthand, while we must rely on a cold transcript. *See In re Marriage of Udelhofen*,

---

[1] In briefing, one of the parties utilizes Lexis® cites for unpublished Iowa Court of Appeals opinions. Iowa Rule of Appellate Procedure 6.904(2)(c) permits citation to an unpublished opinion if it can be readily accessed electronically. In citing to the unpublished opinion, "a party shall include an electronic citation indicating where the opinion may be readily accessed online." Utilizing Lexis® cites is certainly permitted under the rules, but the court has no access to the Lexis® system, so as a practical matter, Lexis® cites are of little to no value to the court. We realize there are a number of electronic legal research services available and that not all law firms or attorneys subscribe to Westlaw® and therefore do not have access to its citation system. When Westlaw® cites are not available to appellate counsel, providing the docket number and date of the unpublished opinion, as the party here did, greatly facilitates our electronic access to the opinion. By this note, we are not critical of appellate counsel in any way—we are just mentioning a probably little-known fact of life.

444 N.W.2d 473, 474 (Iowa 1989); *In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984).

For the reasons that follow, we affirm the property division as modified below.

**I. Property Division.**

Donald first challenges the division of the parties' property. At the time of the trial, Donald and Mary Lou had substantial assets and little debt. They agreed to the disposition of most of their assets. The assets that remained in dispute included a thirty-two acre farm in Warren County and an Edward Jones account valued at $497,153. Donald challenges the award of these two assets, as well as the overall property distribution.

When the court dissolves a marriage, it must divide the parties' property equitably. *See* Iowa Code § 598.21(1) (2016). In determining what division is equitable, the court must consider the factors set forth in section 598.21(5). The trial court has considerable latitude in making this determination, and we only reverse if "there has been a failure to do equity." *See In re Marriage of Schriner*, 695 N.W.2d 493, 496 (Iowa 2005). The question is what is fair and equitable in each circumstance. *In re Marriage of Hazen*, 778 N.W.2d 55, 59 (Iowa Ct. App. 2009). Of course, opinions will vary as to what is fair and equitable in each circumstance.

**A. Warren County Farm.**

The first dispute concerns property referred to as the Warren County Farm, which Donald and Mary Lou purchased in 2010 for $610,000. They agreed the farm's value at the time of trial was $744,500 but disagreed as to whom the court

should award the farm and whether any portion of its value should be set aside to Mary as inherited property. The district court set off $610,000 to Mary Lou as inherited property, determined property's appreciation in value was marital property, and awarded each party one-half of the appreciated value.

Donald argues the court erred in setting aside $610,000 of the farm's value to Mary Lou as inherited property. He argues only $208,000 of the value should be set aside and asks that we divide the remaining value of the property equally.

Generally, inherited property is not subject to division. *See* Iowa Code § 598.21(6). The only exception is where the court finds that failing to do so would be unjust. *See id.* Therefore, the court must first set aside the inherited property before making an equitable division of the marital assets. *See In re Marriage of Sparks*, 323 N.W.2d 264, 267 (Iowa Ct. App. 1982).

The proper amount of the farm's value to set off as Mary Lou's inheritance is $208,000. Mary Lou testified that only $208,000 of the money used to purchase the farm came from her inheritance and she provided documentation to account for this use of inherited funds. This is the amount she requested be set off to her in her proposed division of the property. Mary Lou claims the district court awarded her the full $610,000 purchase price of the farm "in recognition of all that she had done for and provided to Don economically over the years, including utilizing other inheritance she had received from relatives for Don's and the children's benefit." Although Mary Lou's contributions to the marriage may form a basis for awarding

her a greater share of the marital assets, it is improper to set aside the $402,000 of marital funds used to purchase the farm.[2]

Having determined that $402,000 of the farm's purchase price paid for from marital funds should be included in the property division, we must determine how to award those funds equitably. We conclude it is equitable to award each party $201,000—one-half of the marital funds contributed to the farm's purchase. However, we modify the award of the appreciated value of the farm to reflect Mary Lou's contribution of inherited funds. Because those funds comprised 34% of the purchase price, it is equitable to set off 34% of the farm's appreciated value of $134,500 that resulted from the use of the inherited funds, which totals $45,730. We divide the remaining appreciated value—$88,770—equally, with each party receiving $44,385 of the appreciated value.

In summary, of the farm's $744,500 value, we set off $253,730 to Mary Lou as inherited property and award each party $245,385 of the remaining value. With regard to this property, the district court ordered Mary Lou to pay Donald the amount of $67,250 within ninety days of the decree. Assuming Mary Lou has paid that sum to Donald, Mary Lou shall have sixty days from issuance of procedendo to pay Donald the amount of $178,135 for the balance of his share of the farm. If the $67,250 has not already been paid, then Mary Lou shall have sixty days from issuance of procedendo to pay Donald the total amount of $245,385 as his share of the farm.

---

[2] We further note that the aggregate expenditure of Mary Lou's inherited funds on other purchases made during the marriage cannot account for setting aside the $610,000 purchase price. These expenditures, where documented, were set off elsewhere in the property division.

**B. Edward Jones account.**

Donald next challenges the court's award of a jointly owned Edward Jones account (#2912), which was valued at $497,153 at the time of trial. Mary Lou claimed that she deposited $48,392 in money she inherited from her mother into the account and asked that this amount be set aside. The court awarded the Edward Jones account to Mary Lou.

Donald argues the court erred in awarding Mary Lou the account in its entirety. Although Donald agrees that $48,392 should be set aside as Mary Lou's inherited property, he asks that we set aside $90,000.00 of the account's value to reflect his contribution of inherited property. Donald asks that we divide the remaining $358,761 of the account's value equally.

Donald failed to provide documentation of the inherited funds he claims to have contributed to the account. The only evidence supporting his claim is his own testimony. In contrast, Mary Lou provided documentation of a transfer of funds to the account. Although Donald argues that there is no proof that the transferred funds come from her mother's estate, the evidence shows a 2003 in-kind transfer of stocks into the Edward Jones account from a Morgan Stanley account that Mary Lou testified belonged to her mother. Accordingly, we agree the evidence supports Mary Lou's claim that $48,392 of the value of the account is attributable to her inherited property and set off that amount to Mary Lou. We decline to set off $90,000 of the account's value to Donald and affirm its award to Mary Lou.

### C. Overall property distribution.

Finally, Donald argues the overall property division is inequitable.[3] The following is our independent calculation of the property award as modified, less certain property:[4]

| Asset | Value | Mary Lou | Donald |
|---|---|---|---|
| Real estate #1 | $341,549 | $341,549 | $0 |
| Real estate #2 | $173,190 | $0 | $173,190 |
| Real estate #3 | $160,000 | $0 | $160,000 |
| Real estate #4 | $357,000 | $357,000 | $0 |
| Farm | $490,770[5] | $245,385 | $245,385 |
| Lot 1 | $26,120 | $26,120 | $0 |
| Lot 2 | $26,350 | $26,350 | $0 |
| 2016 Mazda | $30,167 | $30,167 | $0 |
| 2007 Lexus | $11,280 | $0 | $11,280 |
| Life insurance | $10,812 | $10,812 | $0 |
| FSB #146 | $49,690 | $49,690 | $0 |
| FSB #228 | $250,617 | $250,617 | $0 |
| FSB #624 | $53,417 | $53,417 | $0 |
| FSB #861 | $7336 | $7336 | $0 |
| FSB #5430 | $10,611 | $0 | $10,611 |
| FSB #3945 | $9808 | $0 | $9808 |
| EJones #6018 | $6911 | $0 | $6911 |
| EJones #2912 | $448,761[6] | $448,761 | $0 |
| SEP account | $628,898 | $628,898 | $0 |
| IRA account | $619,954 | $0 | $619,954 |

[3] Donald references a chart in the decree that lists the parties' assets, their values where agreed upon by the parties and each party's valuation where disputed, and the amount of the marital asset awarded to each party. The chart shows Mary Lou receiving assets worth $2,141,201 and Donald receiving assets worth $1,724,263, but Donald notes that the chart credits him with receiving Mary Lou's pension, valued at $628,898, when the court awarded the pension to Mary. It appears that the chart is a replication of Exhibit 2, Mary Lou's proposed division of the assets and debts, rather than the court's independent illustration and calculation of the property distributed in the decree.

[4] We have opted to exclude from our table any property the parties agreed to auction and divide the proceeds evenly, certain items of personal property for which the parties did not provide valuations, and wholly inherited or gifted property. We also note that the value of Mary Lou's inherited property exceeds $2,000,000.

[5] $744,500 less $253,730 allocated as Mary Lou's inherited property.

[6] $497,153 less $48,392 allocated as Mary Lou's inherited property.

| | | | |
|---|---|---|---|
| Guns/Bows | $20,300 | $0 | $20,300 |
| Norinco Mac90 | $750 | $0 | $750 |
| Remington 870 | $400 | $0 | $400 |
| Single shot 12g | $200 | $0 | $200 |
| Ammunition | $1500 | $0 | $1500 |
| Excavator | $72,100 | $0 | $72,100 |
| Beekeeper suits | $900 | $0 | $900 |
| Cultivator | $225 | $0 | $225 |
| Federal refund | $24,213 | $11,977 | $12,236 |
| State refund | $5509 | $5509 | $0 |
| Total: | $3,839,338 | $2,493,588 | $1,345,750 |

This property division has Mary Lou receiving $1,147,838 more than Donald, which results in an award of about 65% of the marital assets to her.

Our review of the record indicates the parties' professional earnings over the course of the marriage to be roughly equal. As such, we conclude an equitable division of the property should be closer to equal. However, in recognition of Mary Lou's greater contribution of income from property and inheritance money that has benefited the family, it is appropriate to award her a larger percentage of the marital assets. We modify the decree to order Mary Lou to make a $300,000 payment to Donald within sixty days from issuance of procedendo. As a result, Mary Lou will receive marital assets valued at $2,193,588—approximately 57% of the marital assets—and Donald will receive marital assets valued at $1,645,750.

**II. Child Support.**

Donald next contends the district court erred in determining his child support obligation. Specifically, he claims the court wrongly denied him credit for extraordinary visitation as provided in Iowa Court Rule 9.9. He argues his child support obligation after receiving a twenty-five-percent credit for extraordinary

visitation should be $708.83. He asks that this amount be retroactively effective from August 1, 2017, and that he receive credit for overpayment.

Rule 9.9 states that noncustodial parents whose "court-ordered visitation exceeds 127 days per year shall receive a credit" to their share of the support obligation. Iowa Ct. R.9.9. For the purpose of the credit, "days" means "overnights spent caring for the child." *Id.*

The parties stipulated to joint legal custody of I.M., with Mary Lou providing physical care. They also agreed that Donald would have visitation with I.M. each week from Wednesday afternoon until Friday morning, weekend visitation in alternating weeks beginning Thursday afternoon and ending Monday morning, and up to four weeks of summer visitation. However, they disagreed as to the amount of child support Donald should pay. Mary Lou requested Donald pay her $972.10 per month in child support. The district court approved this amount of child support.

Donald moved to enlarge or amend the decree arguing that, when given a credit for extraordinary visitation, the amount of support he should pay under the guidelines is $441.00 per month. He also noted the court failed to identify how it calculated the child-support award or to state why he was not entitled to receive credit for extraordinary visitation. In her response, Mary Lou conceded that the award of child support was incorrect; based on updated income figures, she noted the proper amount of child support was $945.10 per month. Mary Lou disagreed that Donald should receive credit for extraordinary visitation, arguing that although the visitation schedule allowed Donald extraordinary visitation, he failed to exercise this amount of visitation.

The district court agreed with Mary Lou and set the amount of child support at $945.10 per month. With regard to the extraordinary visitation credit, the court found that

> the overwhelming evidence introduced at the trial would also strongly support that the Court does not expect Donald to exercise anywhere near the amount of visitation that the parties' stipulation would allow. During the pendency of this action, his daughter has stayed with him only a very few overnights. [A] number of visit[s] . . . he was entitled to . . . were cancelled. For that reason, the Court determined that it would be improper to give Donald the extraordinary visitation credit he requests.

Donald argues the language of rule 9.9—stating the noncustodial parent "shall" receive the credit—makes the award of the extraordinary visitation credit mandatory. He bases this argument on principles of statutory construction, which hold that we generally interpret the word "shall" to connote a mandatory duty. *See* Iowa Code § 4.1(30)(a) (stating the legislature's use of the word "shall" imposes a duty); *In re Marriage of Thatcher*, 864 N.W.2d 533, 539 (Iowa 2015) ("In a statute, the word 'shall' generally connotes a mandatory duty." (citation omitted)). Because the decree provides Donald with extraordinary visitation, by court rule, he is entitled to a twenty-five-percent credit on his child support obligation. *See In re Marriage of Sirowy*, No. 01-2037, 2002 WL 31529191, at *3 (Iowa Ct. App. Nov. 15, 2002).

We modify the decree to require Donald to pay $708.83 in child support, retroactively effective from August 1, 2017. We note that Donald's failure to exercise his court-ordered visitation may be a basis for modification of his child support obligation. *See* Iowa R. Ct. 9.9.

### III. Income Tax Overpayment.

Finally, Donald argues he is entitled to half of the refund or credit for an overpayment of income taxes Mary Lou made in June 2017. At trial, the parties agreed that Mary Lou had been erroneously assessed $38,271.02 in taxes, which she paid, and that she would eventually receive a credit or refund of that money. They noted that but for the overpayment, that amount of money would remain in Mary Lou's bank account and be divisible as marital property. However, the parties disagreed as to whether it was proper to award half of that overpayment as part of an equalization payment in the decree or whether the decree provide for the allocation of a future refund or credit.

The district court stated it would "segregate that in the decision and . . . deal with that at a later date," but it did not make any provision regarding the overpayment in the decree. Donald failed to raise the omission in his motion to enlarge or amend. Accordingly, error is not preserved for our review. *See In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005).

**AFFIRMED AS MODIFIED.**