# IN THE COURT OF APPEALS OF IOWA

No. 19-1577
Filed September 2, 2020

**IN RE THE MARRIAGE OF AMY MAE KRUG
AND STEVEN FRANCIS KRUG**

**Upon the Petition of
AMY MAE KRUG,**
        Petitioner-Appellee,

**And Concerning
STEVEN FRANCIS KRUG,**
        Respondent-Appellant.
_____

Appeal from the Iowa District Court for Iowa County, Chad A. Kepros, Judge.

The husband appeals from the dissolution decree and challenges the provisions involving legal custody and physical care of the parties' minor child, the valuation, and distribution of marital property, and the requirement he pay $10,000 of the wife's attorney fees. **AFFIRMED.**

Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West Des Moines, for appellant.

Frank J. Nidey and J. Nick Capellupo of Nidey Erdahl Meier & Araguas, PLC, Cedar Rapids, for appellee.

Considered by Tabor, P.J., Greer, J., and Mahan, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**GREER, Judge.**

Steven Krug appeals from the decree dissolving his marriage to Amy Krug. He challenges the court's decision to give Amy sole legal custody and physical care of the parties' minor child, K.K. He argues they should share joint legal custody and K.K. should be placed in his physical care. He also challenges the court's award of the marital home to Amy and, after providing no evidence of his own regarding the value of the home, complains of the district court's valuation. To correct that omission, Steven asks that we remand so more evidence about the value can be presented. Steven argues the district court abused its discretion in ordering him to pay $10,000 of Amy's attorney fees. Amy asks that we affirm and requests that Steven pay $3000 of her appellate attorney fees.

Iowa Code section 598.41(1)(b) (2018) provides "a rebuttable presumption against the awarding of joint custody" if "the court finds a history of domestic abuse exists." Steven does not deny that he has assaulted Amy, and, upon our de novo review,[1] we agree with the district court's finding "that there is a significant history of domestic abuse perpetrated by Steven against Amy in this case." *See* Iowa Code § 598.41(3)(j). Steven argues "the domestic abuse between [them] was mutual," so the presumption should not impede awarding shared legal custody of K.K. Even if we accept Steven's version of the facts, this argument does not support an award of joint legal custody. Joint legal custodians must be able to communicate about their child's needs and come to decisions together. *See* Iowa Code § 598.41(3)(c). These parents are unable to do so—largely because of

---

[1] Because dissolutions are equitable proceedings, our review is de novo. *See In re Marriage of Thatcher*, 864 N.W.2d 533, 537 (Iowa 2015).

Steven's inability to accept answers or responses other than those that match his wants and because of his lack of respect for Amy. As the district court found:

> Unfortunately, Steven has not maintained appropriate boundaries after entry of the Domestic Abuse Protective Order, even when faced with the prospect of mandatory arrest and jail upon violating the order. The Court found Steven in contempt for five separate violations of the Protective Order. Remarkably, Steven refused to accept responsibility at trial for his multiple willful violations of the Domestic Abuse Protective Order. At trial he testified that the contempts were Amy's doing, not his. He likewise tried to minimize the contempts on the basis that his violations were not themselves physically assaultive. . . .
>
> . . . .
>
> . . . While the Court was chagrined to receive as exhibits literally thousands of text messages between the parties, the Court has reviewed the entirety of the text messages received. The texts are especially probative because they represent all of the communication between the parties over the past year by virtue of the protective order. These text messages reflect extraordinarily poor communication between the parties, particularly on Steven's part. While not every text message is inappropriate, the overall impression from reviewing text messages from Steven to Amy is that they are quite often sarcastic, obsessive, demanding, harassing, chiding, unreasonable, and overdramatic. Some of the text messages stray to areas beyond the communication allowed by the Protective Order. Oftentimes multiple messages are sent by Steven in short sequence and if Amy does not respond quickly enough or how Steven wants, Steven claims that Amy is being "cruel," and unwilling to co-parent. . . .
>
> . . . .
>
> The Court had the opportunity to view Steven's demeanor firsthand during trial. Particularly while Amy testified, Steven repeatedly scoffed, stared her down in a way appearing to attempt to mock or intimidate, whispered to his attorney basically non-stop (at a level which made it difficult for the Court to focus on the testimony), and acted in other inappropriate ways. When the Court warned Steven to stop doing so, Steven apologized and said he just couldn't believe what Amy was saying. The Court understands that trial is stressful and that parties sometimes react in inappropriate ways. However, Steven's behavior during trial, especially during Amy's testimony, was especially disruptive and lacking in respect. The impression of the Court is that Steven was reacting to being challenged and not in control. Unfortunately, Steven's behavior during trial, as observed by the Court, is completely consistent with

the testimony of Amy and other witnesses that Steven is often demanding, controlling, and inappropriate.

Based on the toxic interactions inhibiting the ability to co-parent, this is not a case in which joint legal custody is in the child's best interests, even though both Steven and Amy love K.K. and want what is best for the child. Because Amy is awarded sole legal custody of K.K., she is also awarded physical care of the child. *Cf. id.* § 598.41(5)(a) (providing that the court may award joint physical care if it awards joint legal custody).

With custody resolved, we address the property division issue. When deciding to whom to award the marital home, our courts consider "the desirability of awarding the family home or the right to live in the family home for a reasonable period to the party having custody of the children." *Id.* § 598.21(5)(g). "We believe that provisions which allow the primary physical care parent to remain in the family home are primarily made to provide stability for the child[]." *In re Marriage of Ales*, 592 N.W.2d 698, 704 (Iowa Ct. App. 1999). K.K. is a child with some special needs, and—from both parents' testimony—he requires stability and routine to thrive. Because he will remain in Amy's care, Amy will keep the marital home.

Steven challenges the court's valuation of the marital home at $310,000, which the appraiser Amy hired opined was the value of the residence and accompanying twenty acres. Steven provided no evidence on the value of home at trial, and he now asks us to vacate the value determined by the district court and remand to present more evidence. Trial is the time to present evidence, yet Steven countered with no opposing appraisal. Failure to make one's case is not a reason to reverse the district court, which made a determination based on the

evidence properly before it. *See In re Marriage of Hansen*, 733 N.W.2d 683, 703 (Iowa 2007) ("Although our review is de novo, we ordinarily defer to the trial court when valuations are accompanied by supporting credibility findings or corroboration evidence."). Because the trial court's valuation is within the range of the permissive evidence, we will not disturb it. *See id.*

Next, Steven maintains the district court abused its discretion when it ordered him to pay $10,000 of Amy's attorney fees.[2] "Trial courts have considerable discretion in awarding attorney fees," and any award of fees "must be fair and reasonable." *In re Marriage of Guyer*, 522 N.W.2d 818, 822 (Iowa 1994). The district court noted that Amy had incurred around $32,000 in fees in the dissolution—not including the various contempt actions within the domestic abuse protective order case—and that "some of Steven's attitudes, behaviors, and positions have increased the attorney fee cost for Amy." The court also noted that, according to Amy's testimony, Steven had threatened "that if she left him, she'd have the fight of a lifetime, that she'd buy her a lawyer a yacht, and be left without a dime to her name." Recognizing Steven's actions made good on his threat, the court ordered Steven to pay some of those fees. We cannot say the court abused its discretion.

Finally, Amy asks that we award her $3000 in appellate attorney fees. Steven earns more than Amy each year, and he has been wholly unsuccessful in this appeal. *See In re Marriage of McDermott*, 827 N.W.2d 671, 687 (Iowa 2013)

---

[2] Noting Steven did not appear to have cash on hand, the court reduced the equalization payment Amy was to make him for his half of the value of the marital home by $10,000.

("In determining whether to award appellate attorney fees, we consider 'the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal.'" (citation omitted) (altered for readability)).  We award Amy $3000 in appellate attorney fees.

Having considered each issue raised on appeal, further elucidation is neither necessary nor helpful.  The district court fully and carefully considered the facts and legal issues in the written decree, and we agree with its well-reasoned conclusions.  We affirm without further opinion.  *See* Iowa Ct. R. 21.26(1)(d), (e).

**AFFIRMED.**