# IN THE COURT OF APPEALS OF IOWA

No. 20-1607
Filed February 16, 2022

**IN RE THE MARRIAGE OF GARY E. ERLANDSON**
**AND SUSAN KAY ERLANDSON**

**Upon the Petition of**
**GARY E. ERLANDSON,**
      Petitioner-Appellee,

**And Concerning**
**SUSAN KAY ERLANDSON,**
      Respondent-Appellant.

_____

Appeal from the Iowa District Court for Black Hawk County, Melissa Anderson-Seeber, Judge.

A former wife appeals an adverse summary judgment ruling dismissing her petition to modify the property and spousal support provisions of her dissolution decree. **AFFIRMED.**

Mark R. Hinshaw of The Law Offices of Mark R. Hinshaw, West Des Moines, for appellant.

Joshua M. Moon of Dutton, Daniels, Hines, Kalkhoff, Cook & Swanson, P.L.C., Waterloo, for appellee.

Heard by Greer, P.J., Badding, J., and Potterfield, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2022).

**BADDING, Judge.**

To paraphrase a Scottish poet, even the best-laid plans often go awry.[1] The plans in this case attempted to give Susan Erlandson an equal share of her former husband's military retirement pay at the time of the divorce. Those plans went awry when, in the years that followed, the military placed Gary Erlandson on the temporary disability retired list before he reached twenty years of service, thereby foreclosing Susan from receiving any share of his retirement pay.

To remedy the situation, Susan petitioned to modify the property and spousal support provisions of the parties' dissolution decree. The district court dismissed her petition on summary judgment after concluding it lacked authority to entertain her claims. We agree and affirm the court's ruling.

## I. Background Facts and Proceedings

Gary and Susan divorced in late 2015 after fifteen years of marriage. Gary was then a full-time member of the Iowa Army National Guard. In his earlier years of service, he was deployed overseas twice, including a twenty-two-month tour of duty in Iraq from 2005 to 2007. He returned from that deployment suffering from a traumatic brain injury, depression, and post-traumatic stress disorder (PTSD). His mental and physical health took a toll on the parties' relationship, and they eventually separated in 2010.

During their separation, Gary and Susan entered into a "stipulation for separation,"[2] which the district court approved in a "decree for separation." In their

---

[1] This maxim comes from Robert Burns's 1785 poem, "To a Mouse."
[2] In the parties' first appeal, where we affirmed the district court's property division and spousal support award, we characterized this stipulation as akin to "a statutory 'separate maintenance' decree" authorized by Iowa Code section 598.28 (2010).

stipulation, the parties agreed Susan would receive the family home, any "real and personal property, household goods, and furnishings" then in her possession, and a "one-half interest in any pension plan, 401K plans and/or any other retirement plan." When Gary filed for divorce—three years after the stipulation was approved—Susan asked the district court to include those terms in its decree dissolving their marriage. She also made a request for spousal support.

After a trial on Gary's dissolution petition, the district court granted Susan's request for spousal support in a March 30, 2016 decree, awarding her "temporary alimony of $400 per month until December 31, 2018." It also honored her request to incorporate the terms of the previously approved stipulation in its decree. But it filled in some blanks, one of which concerned Gary's military retirement pay. Although the parties agreed Susan would receive "one-half interest in any pension plan," they "did not specify when the one-half interest would be determined or how." *Erlandson*, 2017 WL 3283290, at *2. On that issue, the court found:

> In July 2001 Gary joined the military on a part-time basis. He thus is almost a 15-year employee of the military. He will be eligible to retire after 20 years; however, he would not be eligible to draw retirement pay until age 60, as a part-time employee, minus the time that he served in the war zone in Iraq. He became a full-time member of the military in 2008. If he remains a full-time employee, he would be eligible to draw a 50 percent pension of his then rank pay in the year 2028, regardless of his then age. If he does not complete 20 good years of service either as a part-time o[r] full-time military member, he will draw no pension at all. Because the entirety of [Gary's] military pension was earned during the marriage, [Susan] shall be entitled to receive one-half of that pension, per the Benson formula, when and if [Gary] becomes eligible to draw retirement pay. A separate order will be entered to that effect.

---

*In re Marriage of Erlandson*, No. 16-0989, 2017 WL 3283290, at *2 (Iowa Ct. App. Aug. 2, 2017).

The separate order addressed the division of Gary's military pension under the Uniformed Services Former Spouses Protection Act (USFSPA). *See* 10 U.S.C. § 1408. The order provided that Susan would receive "50% of the Member's Disposable Retired Pay or Retainer Pay."[3] For purposes of the order, "military retirement" was broadly defined to include any retired pay "to which [Gary] would be entitled for longevity of active duty and/or reserve component military service and all payments paid or payable under the provisions of Chapter 38 or Chapter 61 of Title 10, United States Codes." Continuing that definition, the order stated:

> It also includes all amounts of retired pay [Gary] actually or constructively waives or forfeits in any manner and for any reason or purpose, including but not limited to any waiver made to qualify for Veterans Administration [VA] benefits [or] any waiver made in order to qualify for disability retired pay.

In a separate paragraph, the court retained continuing jurisdiction to modify the

> pension division payments or the property division specified herein if [Gary] should waive military retired pay in favor of disability payments or take any other action (such as receipt of severance pay, bonus or an early-out payment) which reduces [Susan's] share or amount herein. This retention of jurisdiction is to allow the Court to adjust [Susan's] share or amount to the pre-reduction level to reconfigure the property division or to award compensatory alimony or damages so as to carry out the original intent of the Court. [Gary] shall indemnify [Susan] as to any reduction in her payments from what they would have been based solely on the length of service.

---

[3] After our decision in the first appeal and procedendo had issued, Gary filed an uncontested motion for entry of a nunc pro tunc order clarifying that his "military pension should not be divided on a straight 50%-50% basis; rather, it should be divided 'per the Benson formula.'" As requested, the district court amended the original order to provide Susan an unspecified percentage of Gary's disposable retired pay to be divided in accordance with the Benson formula.

Several years later, the military's medical evaluation board assessed Gary's health and compiled a list of twenty "diagnosed medical conditions."  Based on those findings, Gary was referred for an informal evaluation by the reviewing board, which determined he was "physically unfit" for duty due to his service-related injuries.  The reviewing board recommended a 70% disability rating and placed Gary on the temporary disability retired list "with a re-examination during February 2020."[4]  Gary's medical board liaison advised him to apply for disability compensation from the VA because he would receive a higher amount than if he elected to receive disability payments from the Department of Defense.  Gary followed this advice, and in November 2019, the VA assigned him a 100% disability rating, entitling Gary to about $3100 per month in benefits.

Meanwhile, Susan filed an application with the Defense Finance and Accounting Service (DFAS) for payment of a portion of Gary's retirement pay pursuant to the USFSPA.  But she was notified that because "the entire amount of the member's retired/retainer pay is based on disability, . . . there are no funds available for payment under the USFSPA."

Susan sought relief by filing an "Application for Modification of Decree of Dissolution of Marriage" in December 2019 that requested "additional property and/or additional spousal support."  In her view, the notice from the DFAS confirmed Gary had waived his military retirement pay to receive disability benefits so that she would not receive any of his retirement pay now or in the future.  From

---

[4] This form of retirement is commonly referred to as "Chapter 61" disability retirement.  *Brown v. Brown*, 260 So. 3d 851, 855 (Ala. Ct. App. 2018).

that premise, she asked the court to exercise its authority under the pension division order and modify the original property division and spousal support award.

Gary responded with a motion for summary judgment, asserting (1) Susan was not entitled to modify property division or spousal support because her interest in his military retirement pay was contingent on him completing twenty years of military service; (2) disability pay was excluded from division in a dissolution under the USFSPA; and (3) the district court could not order him to indemnify Susan for the loss of her share in the retirement pay under *Howell v. Howell*, 137 S. Ct. 1400, 1406 (2017).

Susan resisted, arguing "Gary was awarded military retired pay under Chapter 61 of Title 10." Because he waived that retirement pay in favor of VA disability compensation, Susan asserted she had a right to modify the property and spousal support provisions of the dissolution decree under the terms of the pension division order. In making this argument, Susan clarified that she was not seeking indemnification as prohibited by *Howell*, but simply asking the court to enforce its prior order allowing for modification under the doctrine of res judicata.

Persuaded by Gary's arguments, the court granted summary judgment and dismissed the action on the ground that it lacked jurisdiction to grant Susan relief. While acknowledging that it "specifically retained jurisdiction to review the dissolution decree pertaining to awarding property should a specific situation occur," the court found the circumstances surrounding Gary's discharge did not warrant such review. Likewise, the court determined Susan failed to establish a sufficient change in circumstances to justify modification of her spousal support. Susan appeals.

## II. Scope and Standard of Review

"Summary judgment is appropriate only when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law." *In re Marriage of Romanelli*, 570 N.W.2d 761, 763 (Iowa 1997).

## III. Analysis

Though we do not believe it's necessary to wade too deeply into the complicated law of military retirement pay, we provide a brief background to give context to the parties' positions on appeal.

Under the USFSPA, state courts "may treat disposable retired pay" as divisible property in a divorce proceeding. 10 U.S.C. § 1408(c)(1). "But the USFSPA excludes some types of military retirement pay from 'disposable retired pay.'" *In re Marriage of Tozer*, 410 P.3d 835, 837 (Colo. Ct. App. 2017). One such type is Chapter 61 disability retirement pay, which is what Gary initially received. 10 U.S.C. § 1408(1)(4)(A)(iii). "So, if a veteran's retired pay consists of Chapter 61 disability retirement, it is not disposable retired pay under the USFSPA, and thus is not subject to division as marital property." *Tozer*, 410 P.3d at 837. In addition to Chapter 61 benefits, disabled military members may also be eligible to receive VA disability benefits, like Gary was here. *Selitsch v. Selitsch*, 492 S.W.3d 677, 684 (Tenn. Ct. App. 2015) (citing 30 U.S.C. § 1101 *et seq.*). To avoid double-dipping and to receive non-taxable VA disability compensation, "a former service member must waive a corresponding portion of his or her retirement pay." *Id.* (citation omitted).

In *Mansell v. Mansell*, 490 U.S. 581, 594 (1989), the United States Supreme Court held federal law completely preempts state courts from treating waived

military retirement pay as divisible marital property. The Court built on this holding in *Howell*, where it addressed whether state courts could require a military member to indemnify a former spouse for the loss caused to the spouse by the member's waiver of retirement pay in favor of disability benefits. 137 S. Ct. 1404–05. The Court ruled the difference between orders dividing waived military retirement pay and orders requiring reimbursement or indemnification for that waiver was "semantic and nothing more." *Id.* at 1406. While the Court declared "[a]ll such orders as thus preempted," it noted

> that a family court, when it first determines the value of a family's assets, remains free to take account of the contingency that some military retirement pay might be waived, or, as the petitioner himself recognizes, take account of reductions in value when it calculates or recalculates the need for spousal support.

*Id.*

Against this backdrop, Susan emphasizes that she "is *not* asking for indemnification." Instead, she argues that because Gary "waived his retirement pay . . . in favor of VA disability benefits, [she] had the right to petition the court for modification of the property division (and spousal support provision . . . ), under the reservation of jurisdiction" in the pension division order. The district court rejected this argument, as do we, though for different reasons.

### A. Property Division

The district court began its analysis of the parties' arguments by acknowledging that "a modification of an order dividing retirement funds is part of a property division and therefore not modifiable." *See* Iowa Code § 598.21(7) (2019). Rather than stopping there, the court noted the pension division order "specifically retained jurisdiction to review the dissolution decree

pertaining to awarding property." Based on that provision, the court went on to consider whether Gary's receipt of disability benefits satisfied the condition precedent to its retention of jurisdiction to modify the property division, and concluded it did not.

We do not go so far. Instead, as Gary urges, we find the district court should have ended its analysis when it acknowledged that property divisions are not modifiable. *Id.* This is not to say the court could not interpret and enforce the terms of its prior decree. *See In re Marriage of Morris*, 810 N.W.2d 880, 886 (Iowa 2012) (distinguishing a modification claim and a claim based on the court's interpretation of a decree). But that is not what Susan asked the court to do. Unlike the litigant in *Morris*, who filed an application "asking the court to exercise its equitable power to enter an order effectuating a provision of the Decree," *id.* at 884, Susan petitioned the court to modify the decree to grant her additional property. "Since *Morris*, we now have a clear guidance that all property issues must be incorporated into the decree and the district court may not enter serial final judgments." *In re Marriage of Tekippe*, No. 16-1297, 2017 WL 510985, at *2 (Iowa Ct. App. Feb. 8, 2017) (citing *In re Marriage of Thatcher*, 864 N.W.2d 533, 538 (Iowa 2015)). The provision in the pension order purporting to retain jurisdiction to modify the property division in the dissolution decree does not save Susan because it is not enforceable.[5]

---

[5] Reprising her argument from the district court, Susan argues it should be enforced under the doctrine of res judicata. But res judicata requires a "final judgment on the merits of an action." *In re Marriage of Schebel*, No. 02-0335, 2003 WL 1969096, at *2 (Iowa Ct. App. Apr. 30, 2003). The provision retaining jurisdiction is not in the dissolution decree, which awarded Susan the one-half interest in Gary's military retirement pay, but in a supplemental order giving effect

We addressed this identical issue in *In re Marriage of Carlson*, No. 13-1854, 2015 WL 576014, at *6 (Iowa Ct. App. Feb. 11, 2015). The district court had entered a military pension division order that included a provision allowing it to retain continuing jurisdiction to modify the property division in a dissolution decree. *Carlson*, 2015 WL 576014, at *6. The issue was whether the court could enforce such a provision based on the military ex-spouse's decision to reduce his military retirement pay by receiving VA disability benefits. *Id.* Citing an older case, *In re Marriage of Gahagen*, No. 03-1731, 2004 WL 1813601, at *5 (Iowa Ct. App. Aug. 11, 2004), we reiterated,

> Under Iowa law, absent fraud, duress, coercion, mistake, or other similar grounds which would support modification of an ordinary judgment, property settlements in dissolution decrees are not subject to modification. Therefore, relief in situations such as in this case cannot occur through modification of the decree's property division.

*Id.* Relying on that principle, we struck the jurisdiction provision and remanded for entry of a substituted order. *Id.* at *7; *see also Tekippe*, 2017 WL 510985, at *2 (holding that the court could not "exercise its reservation of jurisdiction as set forth in the decree and order inclusion of a paragraph in the QDRO allowing [the husband] to name a successor alternate payee" because it would result in bifurcated property divisions).

---

to that division. It is thus akin to a qualified domestic relations order (QDRO), which we have characterized as a procedural device "entered to effectuate the property division in the dissolution decree." *In re Marriage of Heath-Clark*, No. 15-0525, 2016 WL 2753779, at *3 (Iowa Ct. App. May 11, 2016). Because these types of orders are not in themselves property settlements, they are not "final judgments." *Id.* As a result, the principles of res judicata do not apply. *Cf. Schebel*, 2003 WL 1969096, at *2 (applying the doctrine of res judicata to enforce a provision in a stipulated decree to pay a former spouse 50% of the other spouse's social security benefits, in violation of federal law).

As in those cases, the district court could not exercise the provision retaining its jurisdiction for a future property modification action based on Gary's post-divorce election to receive disability benefits. Because Susan's claim as to the property division depends exclusively on the enforceability of that provision, it fails as a matter of law. Thus, the court was correct in denying her request to modify the property division.

## B. Spousal Support

After determining that its hands were tied on the property division issue, the district court turned to whether Susan met her burden of showing a material and substantial change in circumstances warranting modification of spousal support. In rejecting her claim, the court explained: "While there has been a significant change in the lives of the parties with [Gary] being medically discharged from the military, it is not the change [the court] specifically retained jurisdiction to address through a modification." Susan challenges that ruling, arguing "[Gary's] waiver of retirement pay in favor of VA disability benefits was *exactly* the type of change contemplated that would invoke the district court's jurisdiction to modify alimony." In other words, she raises the same argument she raised on the property division issue—that the jurisdiction provision solely dictates the outcome. We disagree.

As both parties acknowledge, an award of spousal support may be modified only when there has been a substantial change in circumstances that is "essentially permanent, and not within the contemplation of the court at the time of the decree." *In re Marriage of Sisson*, 843 N.W.2d 866, 870–71 (Iowa 2014); *see* Iowa Code § 598.21C(1). The only change referenced in Susan's brief on appeal is that "[she] is not receiving any of [Gary's] retirement benefits." Susan does not

develop any supporting argument under the traditional modification standard, instead relying only on her contention that Gary's post-divorce election to receive disability benefits fell within the scope of the pension division order. In doing so, she essentially concedes the circumstances as they allegedly occurred *were* contemplated by the court when the decree was entered, which strikes against one of the basic principles governing modification actions.

That being said, we recognize there are cases in which the court may modify a previous award of spousal support without resorting to those principles because it retained jurisdiction to do so. *See In re Marriage of Sjulin*, 431 N.W.2d 773, 776 (Iowa 1988) ("While retention of jurisdiction is discouraged, it is not forbidden." (internal citation omitted)). But "[o]nly when the decree unequivocally provides for later trial court review without the necessity of showing a change of circumstances will we find this was the court's intent." *Id.* Because the pension division order did not unequivocally provide for later court review without proof of a change of circumstances, that exception does not excuse Susan's failure to make such a showing.

What's more, Susan needed to do more than show a substantial change in circumstances to warrant a modification of her spousal support. As Gary points out, a higher standard of proof applies when, as here, the spousal support award was for a finite period. *Sisson*, 843 N.W.2d at 871. By the time Susan brought the modification action, Gary no longer had an obligation to pay her alimony. *See In re Marriage of Marshall*, 394 N.W.2d 392, 393 (Iowa 1986) (recognizing the district court has discretionary authority to decide whether to reinstate alimony payments after initial obligation terminated). While the authority of courts to modify spousal

support includes the power to reinstate a finite award that has terminated, to do so, the circumstances must be "'extraordinary" and "render the original award grossly unfair." *Sisson*, 843 N.W.2d at 871.

The extraordinary circumstances previously found to support this type of modification have occurred only when the receiving party encounters a serious intervening health issue and establishes a continuing need for support. *See, e.g.*, *id.* at 875 (extending rehabilitative spousal support payments after former wife's cancer diagnosis); *In re Marriage of Wessels*, 542 N.W.2d 486, 488 (Iowa 1995) (finding former wife's "permanent deteriorated" mental health condition constituted an extraordinary circumstance warranting continuation of alimony); *Marshall*, 394 N.W.2d at 396–97 (reversing denial of petition to reinstate spousal support based on receiving spouse's breast cancer diagnosis and double mastectomy). Those circumstances are not present here. Susan's request to modify spousal support accordingly must be denied.

Because the district court correctly concluded that neither the property division nor spousal support award were modifiable for the reasons stated above, we affirm its summary judgment ruling dismissing the modification action.

### IV. Appellate Attorney Fees

Gary seeks appellate attorney fees. Because he prevailed, we have discretion to grant his fee request. *See* Iowa Code § 598.36. In exercising this discretion, controlling considerations include the parties' respective abilities to pay, whether the party resisting the modification was successful, and whether a party was obliged to defend the court's decision on appeal. *In re Marriage of Michel*,

839 N.W.2d 630, 639 (Iowa 2013). Although Gary was successful, we do not believe an award of appellate attorney fees is warranted.

**AFFIRMED.**